**In the Interest of S.R. (06/16/80) and B.R. (03/24/79),**

**G.R., Defendant and Appellant.**

**No. 20866.**

Supreme Court of Utah.

March 27, 1987.

Dennis F. Olsen, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Diane W. Wilkins, Asst. Atty. Gen., Salt Lake City, for State.

HOWE, Justice:

Appellant seeks reversal of a juvenile court decree permanently terminating her parental rights and a subsequent order denying her a rehearing.

Appellant is the mother of two minor sons, B.R. (born March 24, 1979) and S.R. (born June 3, 1980). In October 1976, she was referred to the Salt Lake County Detoxification Center (Detox Center) by the University Medical Center because of her drug use. She was again referred by her attorney to the Detox Center in October 1977, and she spent seven days there.

The Utah Division of Family Services opened a voluntary protective supervision case on appellant and her two children in 1980. In 1981, the Division received several complaints, including one submitted in July 1981 by Kelly Myells, who was both a friend of appellant's and employed by Youth Services, regarding appellant's inability to care for B.R. and S.R. due to her continued drug use. After appellant was admitted to Holy Cross Hospital for a drug overdose in October 1981, the Division filed a petition in the Second District Juvenile Court, alleging that B.R. and S.R. were neglected. This petition specifically alleged that (1) during both March and October of 1981, appellant was observed in an unconscious condition and was unable to supervise her children; (2) she abused drugs; (3) she was emotionally unable to care for her children; (4) she had inadequate facilities in which to care for the children; and (5) she was financially and physically unable to care for her children. A trial was held on January 15, 1982, where the court found all of the allegations of the Division's petition to be true and placed the boys in the custody and guardianship of the Division.

At the disposition hearing, also held on January 15, 1982, the juvenile court ordered appellant to comply with a treatment plan outlining the requirements necessary for her to obtain the return of B.R. and S.R. This plan required her to (1) participate in a drug treatment program, (2) demonstrate her abstinence from drugs by completing a urine testing program, and (3) obtain adequate housing for herself and the boys. Appellant made only one initial visit to the drug treatment center and appeared to be on drugs when Dr. Michael DeCaria gave her a psychological examination. She made no additional attempts to comply with the treatment plan.

The juvenile court held several review hearings to gauge appellant's progress. In April 1982, she indicated at a review hearing that she was now willing to adhere to

the treatment plan set forth on January 15, 1982. On August 5, 1982, she met with a rehabilitation counselor from the State Division of Rehabilitation Services who helped her enroll in classes at Utah Technical College. Appellant regained custody of B.R. and S.R. in September 1982, and at a review hearing in October 1982, the juvenile court found that her situation was improving. However, beginning in January 1983, she was again often observed in an intoxicated or "high" condition. Social workers from the Division of Family Services met with her on January 25, 1983, and March 8, 1983, and both times she was incoherent and appeared to be intoxicated. Another social worker, Delynn Anderson, met with her on several occasions during which she appeared to be on drugs. Her grades at Utah Technical College were extremely poor her second quarter. The juvenile court reviewed the case on April 14, 1983, and noted that appellant was back on drugs and had refused to submit to urine tests or enter a detoxification program. She was arrested for public intoxication while on drugs on April 21, 1983, and placed in the Detox Center.

At another review hearing on May 3, 1983, the juvenile court again removed B.R. and S.R. from appellant's custody, placing them in the custody of her parents, and ordered appellant to comply with a new treatment plan. The second treatment plan required her to (1) successfully complete a sixty-day drug treatment program, (2) undergo a psychological examination, (3) undergo therapy for as long as necessary until the therapist recommended that she could provide a safe home and environment for the boys, (4) complete a ten-week parenting class with at least 80 percent attendance, (5) submit to six months of regular, three-times-a-week urine testing following her completion of the drug treatment program to verify her abstinence from drugs, and (6) have supervised regular visits with her boys to demonstrate her ability to comprehend and deal with their needs.

Appellant made some effort to comply with the second treatment plan. She entered the House of Hope, a drug and alcohol treatment center, for a sixty-day drug treatment program on May 20, 1983. Although she was temporarily discharged for thirty days due to her continued use of drugs during treatment, she completed the program on September 29, 1983. Her House of Hope counselor testified that if appellant began using drugs again, she would not be capable of stopping on her own. The counselor also testified that although appellant had completed the sixty-day time period, she had not successfully completed all of the counseling that the program had for her and would probably not remain drug free.

The only other requirement of the second treatment plan appellant completed was the psychological examination. Her first attempt to fulfill this requirement occurred on November 3, 1983, when she refused to continue with the examination because the attending psychologist, Dr. Liz McGill, said appellant exhibited symptoms of current drug use. Appellant's psychological examination was completed November 18, 1983, by Dr. DeCaria and showed that she was more rational then than at the time of Dr. DeCaria's first evaluation of her in February 1982. Appellant completed only the first two requirements of the second treatment plan even though she was repeatedly reminded that successful completion of the entire plan was necessary before she could get her children back.

On November 13, 1983, appellant was treated at Cottonwood Hospital for a barbiturate overdose. By her own admission, she took drugs up until June 1984. At trial, July 18–26, 1984, she claimed to have been drug free since July 1, 1984, but there were no urine tests taken during that time to corroborate this assertion even though such tests were ordered under the juvenile court's second treatment plan. The last urine test she submitted to was taken on June 1, 1984, and showed the presence of drugs.

The two boys remained with appellant's parents until September 26, 1983, when they were placed in the Children's Center. At that time, both of them were given a psychological evaluation by Agnes Plenk, a psychologist at the Center, and were classi-

fied as emotionally depressed, negative, unresponsive, and nonproductive. Appellant was scheduled to visit them on a regular and consistent basis, one to two hours at a time, and attend a parenting session weekly with members of the Center staff. She was informed of the boys' need to have regular, consistent visits from her if they were to improve to a point where they could return to her; yet her visits were irregular, and she was often tardy or absent. When appellant did visit, she did not always exhibit normal warmth and concern for the children. After her visits, both boys would sometimes "soil their pants, whine; and become withdrawn." Also, appellant was sometimes on drugs during her visits, arriving incoherent and weepy and having difficulty walking.

On February 1, 1984, the juvenile court entered an order restricting appellant's visits with her boys to four hours on Sundays. The day and time of the visits were agreed to by her. However, after only one restricted visit, which was not during the appropriate hours, the day was changed to Wednesdays, then to Thursdays, and finally to Fridays in an effort to accommodate her.

In April 1984, a petition was filed by the Division in the juvenile court to permanently terminate appellant's parental rights to the two boys because of her unfitness, pursuant to U.C.A., 1953, § 78–3a–48(1)(a). Several expert witnesses testified at the trial on the petition that her conduct was seriously detrimental to the boys. B.R. was very depressed and lonely, and he spoke only in a monotone voice. He was distrustful of his own ability and fearful. S.R. was unusually attached to his big brother, B.R., depressed and particularly negative. After six months in the Children's Center, both boys showed substantial improvement in their emotional and behavioral conduct. B.R. learned to express himself verbally, began to reach out to his peers, and showed a good overall growth development. S.R. became more outgoing and learned to get along with others. Expert witnesses also testified that the boys' conditions would drastically regress if they were returned to appellant's

custody. In its findings of facts, the court found appellant to be unfit to maintain her parental rights because of her conduct and condition and terminated her parental rights as of January 21, 1985.

On February 22, 1985, appellant filed a timely petition asking the juvenile court to notice an improvement in her condition. Specifically, her petition alleged that she was no longer using drugs and that this fact entitled her to a new hearing. After a hearing on appellant's petition, the court denied the petition on March 12, 1985, because she failed to produce any new evidence in existence either at the time of trial or at the time of the hearing on her petition.

### I.

A juvenile court may terminate parental rights if the court finds clear and convincing evidence of a parent's unfitness. *In re J.P.*, 648 P.2d 1364 (Utah 1982). Furthermore, this Court has held that the parent's conduct or condition must be such that it cannot be corrected, after notice and opportunity, with reasonable efforts of assistance. *Interest of Walter B.*, 577 P.2d 119 (Utah 1978). Finally, we will disturb the findings and conclusions of the juvenile court only if the evidence clearly preponderates against the findings as made or the court has abused its discretion. *See State in the Interest of E.B. v. J.T.*, 578 P.2d 831 (Utah 1978).

In the instant case, the juvenile court found that appellant, by her continued and unchanging conduct, had demonstrated that she was unfit to maintain her parental rights to her children. The court's finding was based on the uncontroverted evidence of appellant's ongoing drug abuse, her conduct's detrimental effect upon the children, and evidence that she had not complied with requirements specified on two separate occasions by the juvenile court as conditions precedent to her regaining custody.

Although appellant does not seriously contest the court's finding that she had been unfit to care for her children, she contends that before the court could per-

manently terminate her rights, it had to find that her condition was permanent. She bases her argument on our decision in *In re Castillo*, 632 P.2d 855 (Utah 1981), where it was found that the natural mother needed constant care and treatment and was incapable of functioning outside the confines of a nursing home. The Court in terminating the natural mother's rights found that her condition was permanent and irreversible and prevented her from caring for her children now and in the foreseeable future. *Id.* at 857. Appellant claims that her condition is not permanent and that there was evidence of her efforts, albeit inconsistent, to change her habits.

■ Appellant misstates the tests. The State is not required to show that the parent's conduct or condition is permanent, but only that the conduct or condition alleged to be seriously detrimental to the child cannot be corrected by reasonable efforts. *Interest of Walter B.*, 577 P.2d 119 (Utah 1978). *See In the Interest of J.C.O. and E.J.O.*, 734 P.2d 458 (1987).

■ After careful review of the facts, it is clear that appellant's conduct and condition were seriously detrimental to B.R. and S.R. All experts agreed that it would be dangerous to the boys' fragile condition to return them to their mother. They also agreed that no significant bonding had occurred between mother and children. There is abundant evidence that both the Children's Center and the Division over a period of twenty-seven months made more than reasonable efforts to assist appellant to comply with the treatment plans prescribed by the juvenile court so that she could regain custody of her children. Therefore, the court properly exercised its authority and discretion by finding and ordering that appellant's parental rights should be terminated. We are mindful that deprivation of parental rights is drastic action. Yet at the same time, the lives and futures of two children are in limbo, and

their interests, too, must be considered and hopefully some permanency and stability found for them.

## II.

Appellant contends that she was entitled to a rehearing under U.C.A., 1953, § 78-3a-46 because she made a timely request based on new evidence which would influence the juvenile court's decision terminating her parental rights. Specifically, she states that the order of termination should be reconsidered because she has made a substantial and significant improvement in eradicating her drug problems and because she is presently free from drug abuse.

■ Although there is no case law specifically addressing section 78-3a-46 on the issue of what constitutes new evidence, there is an abundance of case law addressing this issue as it relates to newly discovered evidence for purposes of retrial under Rule 59(a)(4), Utah Rules of Civil Procedure. In addition to the definitional similarities between the statute and the rule,[1] the policy reasons behind them are also similar. A party is entitled to have all of the relevant evidence in his favor heard at a trial or hearing. However, the interest of finality requires that a party use diligence to discover and present all relevant evidence actually in existence at the time of trial. Because the language and the policies behind the statute and the rule are substantially similar, case law interpreting "newly discovered evidence" for purposes of Rule 59(a)(4) is helpful in interpreting "new evidence" for purposes of section 78-3a-46.

Evidence must meet several requirements to qualify as newly discovered evidence under Rule 59(a)(4). In *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 841 (Utah 1984), we stated that the moving party must show that the evidence has three characteristics in order for a new

---

1. U.C.A., 1953, § 78-3a-46 (as amended) states that a new hearing is authorized when "new evidence which was not known and could not with due diligence have been made available at the original hearing and which might affect the decree, has been discovered."

Rule 59(a)(4) states that a new trial is authorized when there is "newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial."

**58**

trial to be granted. First, it must be material, competent evidence which is in fact newly discovered. Second, it must be such that it could not, by due diligence, have been discovered and produced at trial. Finally, it must not be merely cumulative or incidental, but must be of sufficient substance that there is reasonable likelihood that with it there would have been a different result.

In the instant case, appellant failed to meet her burden of establishing the existence of new evidence. The juvenile court, in its order denying her motion for supplemental hearing, stated:

> In the present matter *counsel for the mother proposes to submit evidence which was not in existence at the time of trial, and in fact is not even in present existence,* but may be obtained in the near future. Specifically, counsel for the mother proposes to have his client evaluated ... to determine whether she is presently addicted.... *Counsel does not know, at this point, whether the proposed new evidence will even materialize.*

(Emphasis added.) The evidence appellant proposed to proffer was merely speculative at the time the motion was made. Because the "new evidence" that appellant relied upon for a rehearing did not exist, the juvenile court properly denied her petition for a rehearing.

### III.

Lastly, appellant contends that she has a constitutional right to a rehearing equal to that afforded other civil litigants under Rule 59(a)(4) of the Utah Rules of Civil Procedure. She bases this contention on the due process and equal protection clauses, but does not identify whether she is relying upon the federal or our state constitution. Nevertheless, we have just pointed out that section 78–3a–46 affords her the same right and opportunity a civil litigant enjoys under Rule 59(a)(4). In both instances, rehearings may be granted when new evidence has been discovered. Since we have construed appellant's right to a rehearing under section 78–3a–46 as broad-

ly as the right of other civil litigants to a rehearing under Rule 59(a)(4), no constitutional question exists.

The order of the juvenile court is affirmed.

WE CONCUR:

HALL, C.J., STEWART, Associate Chief Justice, and DURHAM and ZIMMERMAN, JJ., concur.