68 P.3d 276 (2003)
2003 UT App 75
STATE of Utah, in the interest of L.M., a person under eighteen years of age.
T.M. and J.M., Appellants,
v.
State of Utah, Appellee.
No. 20020431-CA.
Court of Appeals of Utah.
March 20, 2003.
*277 G. Brent Smith and Steven C. Russell, Affordable Legal Advocates, Salt Lake City, for Appellants.
Mark L. Shurtleff, Attorney General, Carol L. Verdoia, and John M. Peterson, Assistant Attorneys General, Salt Lake City, for Appellee.
Martha Pierce and Janice A. Ventura, Salt Lake City, Guardians Ad Litem.
Before Judges JACKSON, DAVIS, and THORNE.

OPINION
THORNE, Judge:
¶ 1 The Parents of L.M. (Parents) appeal from the trial court's denial of their motion for a new trial. We affirm.

BACKGROUND
¶ 2 Following the disposition of their first, direct appeal in this matter, see In re L.M., 2001 UT App 314, 37 P.3d 1188, Parents filed a motion for a new trial based on newly discovered evidence.[1] In support of their motion, Parents submitted affidavits from Dr. Ellen Clark, a Nevada pathologist, and Kathleen Peele, an Associate Professor of Pediatrics at the University of Nevada, Reno, and an expert in the field of child sexual abuse.
¶ 3 Dr. Clark, through her affidavit, stated that she had received the following items from the Parents:
1. Cover letter, pathology protocol, autopsy diagrams, and microscopic slides (18 total, 4 GMS and 14 H & E) from *278 the State of Utah, Department of Health, Office of the Medical Examiner.
2. Cover letter and retainer fee from Steven C. Russell [Parent's attorney] (dated "09/27/1999", but received 03/29/2000).
3. Faxed letter from Steven C. Russell, two pages (4/14/"1999").
4. Cover letter with eight glossy print 3 inch by 5 inch photographs, indicated to show "[K.M.] case", undated.
Based upon the material delivered to Dr. Clark, she concluded that K.M.'s injuries were caused by diaper rash and bacteria, and were not the result of "inflicted trauma" or "sexual abuse."
¶ 4 Kathleen Peele, through her affidavit, stated that she had reviewed the videocolposcope and medical report recorded during the post-mortem examination of K.M.'s body. In her opinion, K.M.'s injuries were not consistent with non-accidental trauma or sexual abuse.
¶ 5 After reviewing this information, the juvenile court concluded that Parents had presented "no newly discovered evidence." Instead, the court found that Parents proffered only additional expert opinion that supported their version of the injuries' origin. Moreover, the proffered opinions merely interpreted substantive evidence that had been presented at the adjudication hearing. The trial court further concluded that Parents had failed to demonstrate that the additional expert testimony could not have been presented at trial. Finally, the trial court concluded that had the post-trial opinions submitted by Parents been considered at trial there was no reasonable likelihood that the result would have been different. Thus, the trial court denied the motion for a new hearing. Parents now appeal.

ANALYSIS
¶ 6 We first address certain allegations contained in Parents' brief. On appeal, Parents, through their attorney Steven Russell, assert that the trial court's conclusions were "ridiculous," that the court's chronology was "bizarre," and that in making the decision the trial court "ignored the evidence," ignored Mr. Russell, and essentially lied to support its conclusion. Such assertions are not supported by the trial court record and are entirely irrelevant and inappropriate to these proceedings. See State v. Cook, 714 P.2d 296, 297 (Utah 1986). Moreover, counsel's unsupported assertions concerning the trial judge's conduct border on violating rule 8.2 of the Rules of Professional Conduct, and we would caution counsel against such unsupported comments in the future. Finally, we remind counsel that
[d]erogatory references to others or inappropriate language of any kind has no place in an appellate brief and is of no assistance to this Court in attempting to resolve any legitimate issues presented on appeal.
Cook, 714 P.2d at 297. Accordingly, we do not consider these assertions further.
¶ 7 Parents' substantive argument centers on the trial court's decision to deny their motion for a new trial on the issue of the custody of L.M. Motions for a new trial in the juvenile court are submitted and considered pursuant to Utah Code Ann. § 78-3a-908 (2002). The language and intent of section 78-3a-908 closely correspond to rule 59 of the Utah Rules of Civil Procedure; thus, we review motions submitted pursuant to section 78-3a-908 under the same standard applied to rule 59 motions. See In re J.P., 921 P.2d 1012, 1016-17 (Utah Ct.App.1996) (citing In re S.R., 735 P.2d 53, 57-58 (Utah 1987)).
¶ 8 Under rule 59, when a party bases its motion for a new trial on newly discovered evidence, the "party must prove the evidence offered meets three requirements for a new trial to be granted." In re J.P., 921 P.2d at 1017. The evidence must first be "material," "competent," and "`in fact newly discovered.'" Id. (citation omitted). Second, the moving party must show that the evidence "`could not, by due diligence, have been discovered and produced at trial.'" Id. (citation omitted). Finally, even if the party is able to meet the first two elements, they must then show that the evidence is not "cumulative or incidental," and *279 that it is "`of sufficient substance that with it there is a reasonable likelihood that there would have been a different result.'" Id. (citation omitted). Moreover, while not relevant to the instant case, we have determined that the moving party must show that the new evidence "`relate[s] to facts [that] were "in existence at the time of trial."'" Id. (citations omitted). So long as the trial court considers these factors, its decision is granted a wide range of discretion. See id. at 1016.
¶ 9 Here, following the disposition of Parents' first appeal, Parents submitted to the trial court a motion for a new trial accompanied by affidavits from two expert witnesses.[2] These experts, after reviewing portions of the available evidence and reports, concluded that K.M.'s injuries were not indicative of inflicted trauma. Furthermore, in the opinion of Dr. Clark, K.M's injuries were most likely caused by diaper rash. Assuming, without deciding, that these opinions satisfy the first element necessary to qualify for a new trial,[3] we address whether the trial court abused its discretion in denying Parents' motion.
¶ 10 "[I]t is essential that the parties seeking a new trial on the basis of newly discovered evidence meet the due diligence component of the rule, `[n]o matter how material or beneficial the [evidence would be] on a new trial.'" ProMax Dev. Corp. v. Mattson, 943 P.2d 247, 253 (Utah Ct.App.1997) (second and third alterations in original) (quoting Shields v. Ekman, 67 Utah 474, 248 P. 122, 125 (1926)). Parents argue that they could not have discovered these experts or accessed their opinions, because they were unaware of the existence of either Dr. Clark or Ms. Peele until Dr. Leis approached Parents at the conclusion of the trial. At that time, Dr. Leis suggested for the first time that Parents submit the evidence to Dr. Clark for further review. Parents' argument misunderstands the meaning of due diligence.
¶ 11 For the due diligence requirement to be satisfied, Parents must show that they thoroughly investigated every available avenue to support their claim. See id. Waiting for Dr. Leis to approach them concerning other possible interpretations of the evidence, rather than approaching Dr. Leis, or any other possible expert, and requesting such a recommendation before the trial, does not satisfy the due diligence requirement. Moreover, when determining compliance with the due diligence requirement, we are not *280 interested in the date the evidence was discovered, or in the date the additional expert was contacted.[4] Rather, we focus our analysis on what could have been discovered by the party prior to the trial had the party fully pursued an active investigation. See id. at 253-54; In re J.P., 921 P.2d at 1017.
¶ 12 Here, Parents offer nothing to suggest that the opinions of either Dr. Clark or Ms. Peele, or those of any similar expert, were out of reach or unavailable prior to trial. Nor do Parents suggest that obtaining reports from Dr. Clark and Ms. Peele would have been especially costly if obtained prior to trial. See ProMax, 943 P.2d at 254. Finally, we see nothing in the record that would support a conclusion that the effort that would have been required to obtain the opinions prior to the trial date would have been any greater than that required after trial. See In re Adoption of McKinstray, 628 P.2d 1286, 1287 (Utah 1981) (stating that "when it appears that the degree of activity or inquiry which led to the discovery of a witness or evidence after trial would have produced the same evidence had it been exercised prior thereto, due diligence has not been exercised"). Thus, we see no reason to conclude that the trial court acted outside its permitted range of discretion in concluding that Parents failed to satisfy the due diligence requirement of rule 59.
¶ 13 Finally, the trial court concluded that even considering the "newly discovered evidence" proffered by Parents, there was no reasonable likelihood of a different result.[5] The trial court found that neither Dr. Clark, nor Ms. Peele, had been provided with the entirety of the evidence submitted at trial. Thus, both expert opinions were based on incomplete information. The trial court also noted that both Dr. Clark and Dr. Leis were pathologists and not experts in the area of child abuse. The trial court therefore concluded that their opinions concerning the origin of K.M's injuries were less reliable than the opinion of the State's child abuse expert, Dr. Karen Hansen of the Child Protection Team at Primary Children's Hospital. Dr. Hansen had testified that K.M's injuries were consistent with inflicted trauma, an opinion Dr. Leis deferred to at trial. The court further determined that the testimony of Ms. Carver was more credible than the opinion of Ms. Peele because Ms. Carver had reviewed all of the available evidence and her opinion was supported by Dr. Hansen. Having reviewed the record, including the affidavits submitted with Parents' motion for a new trial, we conclude that the trial court acted within its permitted range of discretion in concluding that Parents' "newly discovered evidence" would not have changed the outcome of the trial.

CONCLUSION
¶ 14 The trial court properly determined that Parents' motion for a new trial failed to satisfy the due diligence requirement of rule 59. The trial court also acted within its permitted range of discretion in determining that the "newly discovered evidence" proffered by Parents did not create a reasonable likelihood of a different trial outcome.
¶ 15 Accordingly, we affirm the trial court order denying Parents' motion for a new trial.
*281 ¶ 16 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.
NOTES
[1] As it is unnecessary to the issues presented, we do not discuss the incident leading to the removal of L.M. from Parents' home and eventual permanent placement with her maternal grandparents. A full discussion of these facts is available at In re L.M., 2001 UT App 314, 37 P.3d 1188.
[2] Parents also argue that a letter submitted by Dr. Edward Leis, the State's Deputy Chief Medical Examiner, as well as the earlier testimonies of Dr. Edward Freidlander and Dr. J. Wallace Graham should be considered. However, Dr. Leis testified at the hearing, and in the letter to the Parents he stands by his testimony from the hearingstating, "I would still hold true to the statement from the hearing and the autopsy report that there were injuries to the genital area and that I do not know the etiology of these injuries." He does, however, assert in the letter that he "would personally favor [Dr. Clark's] opinion." We see no reason to consider the letter as "newly discovered evidence." The testimonies of both Dr. Graham and Dr. Freidlander were also before the juvenile court prior to the adjudication. Thus, neither qualifies as "newly discovered evidence" for consideration in Parents' motion for new trial.
[3] Parents assert that the trial court, in its order denying their motion, "concluded that the expert testimony [was] not evidence." We disagree. The trial court stated only that the newly submitted expert opinions did not qualify as "newly discovered evidence." (Emphasis added). The trial court determined that the opinions had merely interpreted some of the evidence available at the time of trial and had arrived at conclusions that ran parallel to the opinion offered by Dr. Freidlander at trial. While the question of whether a post-trial expert opinion interpreting evidence submitted during the trial constitutes "newly discovered evidence" under rule 59 has yet to be addressed in Utah, in light of the conclusions reached by other courts, it is possible that we would conclude such opinions do not constitute "newly discovered evidence" under the rule. See State v. Blasus, 445 N.W.2d 535, 543 (Minn.1989) (concluding "[g]enerally[,] expert testimony does not constitute newly discovered evidence justifying a new trial"); State v. Fosnow, 2001 WI App 2, ¶ 16, 240 Wis.2d 699, 624 N.W.2d 883 (same). However, because we conclude that Parents could have, with due diligence, garnered the proffered opinions prior to trial, and because we conclude that the trial court acted within its permitted range of discretion in determining that there was no reasonable likelihood of a different result even if the opinions had been considered, we do not today address whether new or different interpretations of old evidence constitute "newly discovered evidence" satisfying the mandate of rule 59.
[4] Parents' due diligence argument, in-large part, focuses on the dates on which their post-trial experts were contacted. However, our analysis focuses not on the date of actual contact. Rather, we are concerned only with whether it would have been unreasonably difficult for Parents to discover the information prior to the trial. See In re Adoption of McKinstray, 628 P.2d 1286, 1287-88 (Utah 1981). Thus, we conclude that the trial court's determination that the expert opinions were discoverable prior to trial is within its discretion. Cf. American Rural Cellular, Inc. v. Systems Comm. Corp., 939 P.2d 185, 191 (Utah Ct.App.1997) (explaining that the plaintiff "would ... be expected to diligently seek out any evidence available regarding" their claim).
[5] While not clearly stated in the record, the findings also suggest that the proffered opinions were cumulative of the opinions of Dr. Graham and Dr. Freidlander. This conclusion alone would be sufficient to support the trial court's denial of Parents' motion for a new trial. See Barson v. E.R. Squibb & Sons, Inc., 682 P.2d 832, 841 (Utah 1984) (affirming the trial court's denial of a motion for a new trial based on the finding that the "newly discovered evidence" was merely cumulative of evidence introduced at trial).