134 P.3d 1157 (2006)
2006 UT App 145
STATE of Utah, in the interest of C.L., D.S., and R.S., persons under eighteen years of age.
A.M.K., Appellant,
v.
State of Utah, Appellee.
No. 20050661-CA.
Court of Appeals of Utah.
April 13, 2006.
*1158 Lisa B. Lokken, Lokken & Associates PC, Salt Lake City, for Appellant.
Mark L. Shurtleff, Atty. Gen., and Carol L.C. Verdoia, Asst. Atty. Gen., Salt Lake City, for Appellee.
Martha M. Pierce and Brent J. Newton, Salt Lake City, Guardians Ad Litem.
Before Judges BILLINGS, DAVIS, and McHUGH.

MEMORANDUM DECISION
DAVIS, Judge:
¶ 1 A.M.K. (Mother) appeals from the juvenile court's termination of her parental rights and denial of her motion for a new trial. Mother does not challenge the grounds for termination, see Utah Code Ann. § 78-3a-407(1) (2002), but instead asserts that the State failed to establish by clear and convincing evidence that it was in her children's best interests to terminate her parental rights, see id. § 78-3a-402(2) (2002). We reverse and remand for a new trial.
¶ 2 Mother filed a motion for a new trial under rule 59 of the Utah Rules of Civil Procedure. See Utah R. Civ. P. 59. However, in the juvenile court, a motion for a new trial should be submitted and considered pursuant to Utah Code section 78-3a-908 rather than rule 59. See Utah Code Ann. § 78-3a-908 (2002); In re L.M., 2003 UT App 75, ¶ 7, 68 P.3d 276. Nonetheless, "[t]he language and intent of section 78-3a-908 closely correspond to rule 59 of the Utah Rules of Civil Procedure," and "we review motions submitted pursuant to section 78-3a-908 under the same standard applied to rule 59 motions." In re L.M., 2003 UT App 75 at ¶ 7, 68 P.3d 276. Therefore, we will treat Mother's motion for a new trial as if it were appropriately brought under Utah Code section 78-3a-908.
¶ 3 When a party bases a motion for a new trial on newly discovered evidence, the party "must prove the evidence offered meets three requirements for a new trial to be granted." In re J.P., 921 P.2d 1012, 1017 (Utah Ct.App.1996).
First, it must be material, competent evidence which is in fact newly discovered. Second, it must be such that it could not, by due diligence, have been discovered and produced at trial. Finally, it must not be merely cumulative or incidental, but must be of sufficient substance that there is a reasonable likelihood that with it there would have been a different result.
*1159 Id. (quotations and citations omitted). Additionally, "newly discovered evidence must relate to facts which were in existence at the time of trial." Id. (quotations, citation, and alteration omitted). "We afford the juvenile court a wide range of discretion to grant or deny a motion for a new trial, and we assume that the [juvenile] court exercised proper discretion unless the record clearly shows the contrary." Id. at 1016 (quotations and citations omitted).
¶ 4 Under the doctrine of horizontal stare decisis, we are bound by our prior precedent. See State v. Menzies, 889 P.2d 393, 399 n. 3 (Utah 1994) ("Horizontal stare decisis ... requires that a court of appeals follow its own prior decisions."). In In re J.P., the State petitioned to terminate a mother's parental rights to her children. See In re J.P., 921 P.2d at 1014. The juvenile court refused, stating that the State failed to show by clear and convincing evidence that it was in the best interests of the children to terminate contact with their mother. See id. at 1015. The juvenile court also noted that "[t]he present foster home as a prospective adoptive home is in serious question" and expressed "some concern over whether the foster parents ... would be willing to adopt both children." Id. at 1017 (alteration and omission in original). Eleven days after trial, the State learned that the foster parents were willing to adopt the children and filed a motion for a new trial, which the juvenile court denied. See id. at 1016.
¶ 5 We reversed and remanded, holding that the juvenile court abused its discretion in denying the motion for a new trial. In our opinion, we depended largely on the juvenile court's continuing jurisdiction to determine the best interests of children:
[T]o effectively determine the best interests of a child, the juvenile court needs continuing jurisdiction, and thus must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy. This principle, coupled with the equitable nature of juvenile court proceedings, supports a less stringent notion of finality.
Id. (quotations and citations omitted). We also noted that the State could simply file another petition to terminate parental rights, including the information regarding the foster parents' willingness to adopt, and determined that liberally applying the rules pertaining to new trials was "a more efficient remedy." Id. at 1018.
¶ 6 In In re J.P., we also addressed the requirements that must be met before a juvenile court can grant a new trial based on newly discovered evidence. In particular, we concluded that the evidence was "newly discovered, and could not, through due diligence, have been produced at trial" because "[d]espite repeated attempts before and during the time of trial to get a definite response from the foster parents, the State did not learn until eleven days after trial that the foster parents were definitely willing to adopt." Id. at 1017. We also determined that the evidence was not merely cumulative because the juvenile court specifically expressed concern regarding the foster parents' unwillingness to adopt the children. We therefore concluded that "the new evidence provided by the State could have resulted in a different outcome" because "[e]vidence of this nature is critical to a determination of the children's best interests." Id. Finally, we held that the newly discovered evidence related to facts in existence at the time of trial because, at that time, "it was unclear whether the foster parents were willing to adopt." Id. at 1017-18.
¶ 7 The similarity between the facts of this case and the facts of In re J.P. cannot be ignored. In In re J.P., the foster parents simply had not taken a position regarding adoption. At the trial here, the foster mother expressed her unequivocal intent to adopt two of the children, yet shortly thereafter relinquished the children to the care of the State.[1] The juvenile court relied heavily on the relationship between the children and the foster mother, and the foster mother's intent *1160 to adopt them, in making its decision to terminate Mother's parental rights.[2] We therefore conclude that "the new evidence [regarding the foster mother's unwillingness to adopt the children] could have resulted in a different outcome." Id. at 1017. Because we are bound by our prior decisions, see Menzies, 889 P.2d at 399 n. 3, we must reverse the juvenile court's decision and remand for a new trial.
¶ 8 Reversed and remanded.
¶ 9 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.
NOTES
[1] The timing here suggests ambiguity respecting the foster mother's willingness to adopt at the time of the trial, similar to the foster parents in In re J.P., 921 P.2d 1012, 1017 (Utah Ct.App. 1996).
[2] The juvenile court made findings of fact that the children were "bonding with their foster mother and she [was] providing them with the stability, nurturing, and permanency that they need" and that the foster mother was "willing to adopt [the children]."