2007 UT 51

**STATE of Utah in the interest of C.L., D.S., and R.S., persons under eighteen years of age.**

**Office of the Guardian ad Litem, Petitioner,**

v.

**A.M.K., Respondent.**

**No. 20060441.**

Supreme Court of Utah.

July 10, 2007.

◉⇝211

Mark L. Shurtleff, Att'y Gen., Carol L.C. Verdoia, John M. Peterson, Asst. Att'ys Gen., Salt Lake City, for the State.

Martha Pierce, Brent J. Newton, Salt Lake City, for petitioner.

Lisa B. Lokken, Salt Lake City, for respondent.

On Certiorari to the Utah Court of Appeals

PARRISH, Justice:

## INTRODUCTION

¶ 1 A.M.K.'s parental rights were terminated by the juvenile court. Thereafter, A.M.K. sought a new termination hearing, arguing that the failure of a planned adoption of two of her children constituted newly discovered evidence. We hold that the failed adoption does not qualify as newly discovered evidence because it is not evidence of facts in existence at the time of trial.

## BACKGROUND

¶ 2 A.M.K. is the biological mother of three minor children, C.L., D.S., and R.S. In December 2003, the Division of Child and Family Services ("DCFS") began an investigation of A.M.K.'s home in response to an allegation that she physically abused one of the children. During the course of this investigation, A.M.K. tested positive for methamphetamine and engaged in an incident of domestic violence while the children were present. The juvenile court found that the children were abused and ordered DCFS to provide protective supervision services.

¶ 3 In April 2004, the children were removed from A.M.K.'s home because she and the father of D.S. and R.S. had violated a no contact order and had once again engaged in domestic violence in the presence of the children. The juvenile court approved a service plan with the ultimate goal of returning custody to A.M.K. The service plan required A.M.K. to complete the recommendations of drug and domestic violence assessments, submit to random urinalysis, and complete the peer parenting program. The juvenile court later changed the permanency goal from reunification to adoption because A.M.K. had failed to comply with the service plan. Following several temporary placements, R.S. was placed in the custody of A.M.K.'s aunt and her husband, while C.L. and D.S. were placed with a foster mother.

¶ 4 DCFS petitioned to terminate A.M.K.'s parental rights, and a hearing was held in April 2005. At the hearing, A.M.K. admitted that she had made little progress on her service plan. A.M.K. acknowledged that she had not been submitting to random urinalysis, did not participate in domestic violence treatment, and while she had attended some substance abuse counseling, had not completed treatment. A.M.K. presented no evidence to rebut the State's assertion that she was an unfit parent under Utah Code sections 78–3a–402(2) and –406(3), but instead argued that terminating her rights was not in the best interests of the children.

¶ 5 As part of the State's case that the best interests of the children would be served by terminating A.M.K.'s parental rights, the foster mother of C.L. and D.S. testified that she was willing to adopt them. A.M.K.'s aunt also testified that perhaps she and her husband would be willing to adopt R.S. if he could not live with his siblings.

¶ 6 The juvenile court ultimately found that A.M.K. was an unfit or incompetent parent. The court also found that the children had been placed in stable, nurturing homes with families that were willing to adopt them. In contrast, the juvenile court determined that A.M.K. would not be able to provide a safe and stable home in the near future. Consequently, the juvenile court found that the termination of A.M.K.'s parental rights was in the children's best interests and issued an order terminating those rights.

¶ 7 Following the hearing but before the termination order was issued, the foster mother relinquished custody of C.L. and D.S. and abandoned her plans to adopt the two children. Consistent with her claim that this

event constituted newly discovered evidence relating to the best interests of the children, A.M.K. filed a timely motion for a new hearing under Utah Rule of Civil Procedure 59(a)(4).[1] The juvenile court denied the motion because the failed adoption was "a change in circumstances for [C.L.] and [D.S.] which occurred after the trial held on April 26, 2005," and not "'newly discovered evidence' as contemplated by [rule 59(a)(4)]."[2]

¶ 8 A.M.K. appealed to the Utah Court of Appeals. That court found that the proper avenue for pursuing a new hearing was not rule 59(a)(4) of the Utah Rules of Civil Procedure, but rather Utah Code section 78–3a–908. *A.M.K. v. State (State ex rel. C.L.)*, 2006 UT App 145, ¶ 2, 134 P.3d 1157. Because the standard applicable to both rule 59(a)(4) and Utah Code section 78–3a–908 is the same, the court treated the motion as if it were brought under the statute. *Id.* It then held that, under principles of horizontal stare decisis, it was bound by the precedent established in *State v. J.P.S. (In re J.P.)*, 921 P.2d 1012 (Utah Ct.App.1996), to reverse the juvenile court and order a new hearing on the basis of newly discovered evidence. *State ex rel. C.L.*, 2006 UT App 145, ¶¶ 4–7, 134 P.3d 1157.

¶ 9 We granted certiorari to review the court of appeals' decision.

## ANALYSIS

¶ 10 We begin by determining whether we should review the propriety of granting a new hearing under rule 59(a)(4), the provision under which the motion was originally brought and considered, or under Utah Code section 78–3a–908, the provision under which

the court of appeals recast the motion because it found that the statutory remedy had completely eclipsed rule 59(a)(4) in juvenile court proceedings. Rule 48(a) of the Utah Rules of Juvenile Procedure states that "[n]ew hearings shall be available in accordance with Utah R. Civ. P. 52, 59, and 60." Thus, rule 59(a)(4) is explicitly adopted under the juvenile court rules. And although section 78–3a–908 contains language very similar to rule 59(a)(4), nothing in the statute or our case law eliminates a party's right to seek relief under the Utah Rules of Civil Procedure. We therefore conclude that parties may seek a new hearing under either rule 59(a)(4) or section 78–3a–908. It was therefore improper for the court of appeals to recast A.M.K.'s motion as if it were brought under the statute.

¶ 11 This error, however, neither affects our analysis nor prejudices the parties who have briefed the matter under Utah Code section 78–3a–908 because both avenues for seeking a new trial are reviewed under the same standard.[3] *In re S.R.*, 735 P.2d 53, 57 (Utah 1987) (interpreting the previous version of the statute, Utah Code Ann. § 78–3a–46 (1987), and applying rule 59(a)(4)'s requirements for newly discovered evidence "[b]ecause the language and the policies behind the statute and the rule are substantially similar"). Therefore, even though we evaluate the court of appeals' decision under rule 59(a)(4), we look to precedent that interprets both the rule and the statute, as did the parties and the court of appeals below. *See A.M.K. v. State (State ex*

---

1. In her motion, A.M.K. also claimed that she was entitled to relief from judgment under rule 60(b) of the Utah Rules of Civil Procedure. She has since abandoned this claim, and we do not address it.

2. The juvenile court, however, issued its order before A.M.K. was able to reply to the memorandums of the guardian ad litem and the State in opposition to the mother's motion. After allowing A.M.K. to file her reply, the court issued a second order, again denying her request for relief.

3. The principal differences between the rule and the statute involve standing and the proper time

frame for bringing a motion for a new hearing. Rule 59(a) limits standing to parties to the underlying action, while Utah Code section 78–3a–908 expands standing to include "[a] parent, guardian, custodian, or next friend of any minor adjudicated under this chapter, or any adult affected by a decree in a proceeding under this chapter." In addition, under rule 59(b) a party has ten days from the entry of judgment to request a new hearing, while section 78–3a–908 allows a party to petition for a new hearing "at any time." Because A.M.K. was a party to the termination hearing and petitioned for a new hearing within the time allotted under rule 59(b), these differences are immaterial here.

*rel. C.L.)*, 2006 UT App 145, ¶¶ 2–7, 134 P.3d 1157.

¶ 12 Rule 59(a)(4) provides that a new trial may be granted for "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." Cases interpreting both this rule and Utah Code section 78–3a–908 have established that a party must prove that the offered evidence meets four requirements in order to merit a new trial: (1) " '[I]t must be material, competent evidence which is in fact newly discovered,' " (2) " 'it must be such that it could not, by due diligence, have been discovered and produced at trial,' " (3) " 'it must not be merely cumulative or incidental, but must be of sufficient substance that there is a reasonable likelihood that with it there would have been a different result,' " *State v. J.P.S. (In re J.P.)*, 921 P.2d 1012, 1017 (Utah Ct.App.1996) (quoting *In re S.R.*, 735 P.2d at 58), and (4) it " 'must relate to facts which were in existence at the time of trial,' " *id.* (quoting *In re Disconnection of Certain Territory*, 668 P.2d 544, 549 (Utah 1983)).[4]

¶ 13 If the moving party fails to establish any one of these elements, a new trial may not be granted. Because we hold that the failed adoption is not evidence of facts in existence at the time of the hearing, we conclude that A.M.K. was not entitled to a new hearing and that we need not consider the remaining elements.

¶ 14 To justify a new trial under rule 59(a)(4), a movant must point to newly discovered evidence that relates "to facts which were 'in existence at the time of trial.' " *In re Disconnection of Certain Territory*, 668 P.2d at 549 (quoting *Campbell v. Am. Foreign S.S. Corp.*, 116 F.2d 926, 928 (2d Cir.1941)). "A motion for a new trial or amended judgment cannot be based on facts occurring subsequent to trial[;] ... other-

wise, there would be no end to litigation." *Id.*

¶ 15 In *In re J.P.*, 921 P.2d at 1016–18, however, the court of appeals adopted a liberalized version of this rule 59(a)(4) requirement for certain juvenile court proceedings. In that case, the juvenile court declined to terminate parental rights at a termination hearing. *Id.* at 1015. Eleven days later, the State learned that the foster parents, who did not testify at the hearing, were willing to adopt the children. *Id.* at 1016. The State sought a new hearing under rule 59(a)(4), but the juvenile court denied the motion. *Id.* The court of appeals reversed, finding that the juvenile court had abused its discretion in denying the new hearing. *Id.* at 1018. In so holding, the court of appeals reasoned that nothing prevented the State from simply refiling its application to terminate the parental rights with the additional information about the foster parent's willingness to adopt. *Id.* Accordingly, the court of appeals concluded that "[a]llowing a liberal application of Rule 59 seems a more efficient remedy." *Id.*

¶ 16 In liberally construing rule 59(a)(4), the court of appeals embraced a relaxed version of the requirement that the newly discovered evidence relate to facts in existence at the time of trial. Although no evidence regarding the foster parent's willingness to adopt had been offered at the hearing, the court reasoned that "[t]he issue of whether the foster parents were willing to adopt was at issue at the time of trial and thus the newly discovered evidence relates to facts in existence at the time of trial." *Id.* at 1017. Thus, the court of appeals appears to have endorsed a finding that newly discovered evidence relates to *facts in existence* at the time of trial whenever such evidence relates to an *issue present* at the time of trial.

¶ 17 In this case, although the court of appeals references the requirement that the newly discovered evidence relate to facts in existence at the time of the hearing, it cites

---

4. Several opinions from the court of appeals have articulated this set of requirements as three elements plus an additional requirement that the evidence relate to facts in existence at the time of trial. *State ex rel. C.L.*, 2006 UT App 145, ¶ 3, 134 P.3d 1157; *T.M. v. State (State ex rel. L.M.)*, 2003 UT App 75, ¶ 8, 68 P.3d 276; *In re J.P.*, 921

P.2d at 1017. Although we agree that the court of appeals has correctly synthesized these requirements from our holdings in *In re S.R.*, 735 P.2d at 58, and *In re Disconnection of Certain Territory*, 668 P.2d at 549, for the sake of clarity, we refer to them as four elements.

and applies the liberalized requirement from *In re J.P.* that the evidence relate to an issue present at the time of trial. *See State ex rel. C.L.,* 2006 UT App 145, ¶¶ 6–7 & n. 1, 134 P.3d 1157 (implying that the failed adoption related to "ambiguity respecting the foster mother's willingness to adopt at the time of trial"). Our initial inquiry, therefore, is whether the court of appeals applied the correct legal standard.

¶ 18 We hold that the court of appeals incorrectly applied the legal standard from *In re J.P.* because the justification driving the liberal application of rule 59(a)(4) in that case is simply not present here. The *In re J.P.* court correctly noted that the State may reinitiate proceedings to terminate parental rights at any time and present any newly discovered evidence in those proceedings. 921 P.2d at 1018. In other words, a termination hearing that does not result in the termination of parental rights does not insulate a parent from future scrutiny if subsequent evidence of abuse or neglect is discovered by the State. Thus, the question is not whether the State will be able to present the newly discovered evidence, but how the State must proceed in order to have the evidence heard—by filing a new petition or a rule 59(a)(4) motion. The *In re J.P.* court found that a liberal application of rule 59(a)(4) "seems a more efficient remedy." *Id.*

¶ 19 This same reasoning does not apply where a parent's rights have been terminated. In such cases, the terminated parent becomes a legal stranger to the child and may not initiate a new proceeding to reestablish her rights. *See* Utah Code Ann. § 78–3a–413(1) (2002). Thus, applying a liberalized version of the requirements for a rule 59(a)(4) motion in this case is not a matter of mere procedural convenience, but greatly expands a terminated parent's substantive right to challenge the termination. Although we have no occasion to either affirm or overrule the *In re J.P.* decision, we hold that where the court of appeals' stated justifica-

tion for relaxing the rule 59(a)(4) requirements is absent, the court of appeals erred in concluding that principles of horizontal stare decisis required the application of the relaxed requirement.[5]

¶ 20 Having concluded that the court of appeals erred in disposing of this case on principles of horizontal stare decisis, we proceed to determine whether the newly discovered evidence offered by A.M.K. related to facts in existence at the time of the hearing. So long as the juvenile court considers and makes a finding in reference to this requirement, that finding will be reversed only if the court has abused its discretion. *See T.M. v. State (State ex rel. L.M.),* 2003 UT App 75, ¶ 8, 68 P.3d 276; *Doty v. Town of Cedar Hills,* 656 P.2d 993, 995 (Utah 1982). Although the juvenile court did not explicitly reference this requirement, it did find that the failed adoption was not "newly discovered evidence" because it was "a change in circumstances for [C.L.] and [D.S.] which occurred after the trial held on April 26, 2005." From this finding, it is evident that the juvenile court considered the issue and found that the failed adoption was a "fact[ ] occurring subsequent to trial," rather than evidence "relat[ing] to facts which were in existence at the time of trial." *In re Disconnection of Certain Territory,* 668 P.2d at 549 (internal quotation marks omitted). This finding was not an abuse of discretion.

¶ 21 At the termination hearing, the foster mother expressed a willingness to adopt C.L. and D.S. at some future date. After the hearing, however, the foster mother relinquished custody of the children and abandoned her plans to adopt. A.M.K. argued before the juvenile court that the subsequent failed adoption was evidence of facts in existence at the time of the hearing, specifically, that the foster mother was untruthful in her testimony and that the children's placement with the foster mother was unstable at the time of the hearing.

---

**5.** Moreover, the court of appeals seems to have gone beyond what is required by horizontal stare decisis. Rather than articulating and applying the legal principles adopted by *In re J.P.,* the court of appeals merely found that *In re J.P.* applied to the present case and then found that it

was obligated to reach the same result. Although stare decisis requires courts to adhere to legal rules set forth in prior precedent, it neither requires nor authorizes courts to abdicate their responsibility to apply these rules to the unique factual circumstances of each case.

¶ 22 In evaluating A.M.K.'s argument, we seek to clarify the manner in which a best interests analysis intersects with the requirement that newly discovered evidence relate to facts in existence at the time of the hearing. In most criminal and civil cases, a factfinder dissects a dead body of evidence in an endeavor to determine what transpired before the trial began. In contrast, a juvenile court judge conducting a best interests analysis must weigh evidence forecasting future events in order to predict what course of action will best protect and nurture the child. This special function of the juvenile court presents unique dilemmas when new hearings are sought upon the nonoccurrence of future events predicted by testimony at the hearing. The essential question presented by this scenario is whether the failure of the predicted event or condition constitutes evidence of a fact in existence at the time of the hearing, namely, the falsehood or unreliability of the predictive testimony, or whether it is a fact occurring subsequent to the hearing.

¶ 23 Although no Utah case has directly addressed this question, it has been addressed in precedent from other jurisdictions cited by this court. In *In re Disconnection of Certain Territory*, 668 P.2d at 549, where we adopted the requirement that newly discovered evidence relate to facts in existence at the time of trial, we cited two cases addressing this issue in the context of personal injury claims involving prospective damages. First, we cited *Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926, 928 (2d Cir. 1941), for the proposition that in order to avoid interminable litigation, posttrial facts could not be used to seek a new trial. *In re Disconnection of Certain Territory*, 668 P.2d at 549. The language in *Campbell* relevant to this proposition states, "If it were ground for a new trial that facts occurring subsequent to the trial have shown that the expert witnesses made an inaccurate prophecy of the prospective disability of the plaintiff, the litigation would never come to an end." 116 F.2d at 928. Second, we cited *Rogers v. Ogg*, 101 Ariz. 161, 416 P.2d 594, 596–97 (1966), *overruled on other grounds by U.S. West Commc'ns, Inc. v. Ariz. Dep't of Revenue*, 199 Ariz. 101, 14 P.3d 292, 295 (2000), for this same proposition. *In re Disconnection of*

*Certain Territory*, 668 P.2d at 549. In the *Rogers* case, the Arizona Supreme Court similarly reasoned:

> The courts, upon considerations of public policy, as a rule are not favorable to the granting of new trials on newly discovered evidence claiming to show a changed condition subsequent to trial, which, as has been said, "may tend to imperil the security of judgments, may lead to interminable delay in arriving at definite determinations in actions, [and] may be productive of multitudinous and exasperating applications for new trials in cases, *particularly where verdicts rest in any degree upon expert evidence as to future resultant conditions reasonably to be apprehended."*

416 P.2d at 596–97 (quoting *Woods v. Ky. Traction & Terminal Co.*, 252 Ky. 78, 65 S.W.2d 961, 964 (1933)); *accord Fowler–Propst v. Dattilo*, 111 N.M. 573, 807 P.2d 757, 760 (Ct.App.1991) ("Both parties know that their expert testimony may be proved wrong by subsequent events. Yet neither expects a favorable damage award to be set aside when future events show that the prediction was inaccurate. Such adjustments could go on indefinitely, leading to multiple reopening [sic] of a single case. Parties take their chances based on the information existing at the time of trial.").

¶ 24 This court echoed these policy concerns regarding the finality of judgments and adopted language nearly identical to that found in *Campbell* when we held that "[a] motion for a new trial or amended judgment cannot be based on facts occurring subsequent to trial. If the rule were otherwise, there would be no end to litigation." *In re Disconnection of Certain Territory*, 668 P.2d at 549 (citations omitted). Viewing this statement in the context of the precedent we cited when making it, we conclude that future developments relating to predictive testimony given at trial are facts occurring subsequent to trial and therefore may not constitute a basis for a rule 59(a)(4) motion for a new trial. Only direct evidence of intentional fraud or perjury at trial is sufficient to meet this requirement in such situations. *See Campbell*, 116 F.2d at 928.

¶ 25 The policy concerns we have expressed regarding the potential for interminable litigation are perhaps even more pressing in the context of a best interests determination for a child. In order to determine what is in a child's best interests, the juvenile court must weigh testimony that predicts the constantly shifting future status of both the biological parent and the child's potential placement. If biological parents were able to relitigate the best interests issue every time a future fact or condition varied from a prediction at a hearing, no child could be truly secure in a future placement or adoption.

## CONCLUSION

¶ 26 We reverse the court of appeals and affirm the juvenile court in denying a new hearing under rule 59(a)(4). The juvenile court did not abuse its discretion in finding that the failed adoption was a fact occurring subsequent to the hearing and therefore did not constitute newly discovered evidence.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.