STATE of Utah, IN THE INTEREST
OF D.G. and C.G., persons under
eighteen years of age.

D.G., Appellant,

v.

STATE of Utah, Appellee.

No. 960215–CA.

Court of Appeals of Utah.

May 8, 1997.

Kent E. Snider, Ogden, for Appellant.

Jan Graham and Carol L.C. Verdoia, Salt
Lake City, for Appellee.

Diane R. Balmain, Logan, Guardian Ad Litem.

Before DAVIS, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

D.G. appeals from an order of the juvenile court terminating her parental rights to her children, C.G. and D.G. Appellant first claims the juvenile court's findings of fact supporting the termination of her parental rights to C.G. were not supported by clear and convincing evidence. Appellant also claims that because D.G. was not in the custody of the Division of Family Services (DFS)[1] prior to the filing of the petition, the court should not have considered the petition as it related to D.G. Finally, appellant claims that the evidence was not sufficient to support termination of her parental rights as to D.G. We affirm.

## FACTS

On October 22, 1993, DFS received reports that C.G.'s father (Father) had slapped C.G. and caused bruising, which Father admitted were true. In response, appellant promised that she would do her best to protect C.G. Further, appellant and Father told Sandra Furland, the DFS caseworker, that they would go to parenting classes. Neither parent attended the classes. A short time later appellant informed Furland that Father had abused her and a protective order had been issued.

On December 6, 1993, appellant, upset and crying, called Furland stating she was having a difficult time with the children. Furland offered to put the children in foster care if necessary. On December 9, appellant again called DFS, this time stating that she had excessively spanked C.G. for spilling flour on the floor. She asked DFS to place C.G. in foster care, and DFS did so. The next day, a petition was filed alleging neglect and abuse of C.G., which appellant admitted. The court gave DFS custody of C.G. and ordered appellant to follow a treatment plan to be initiated by DFS. Appellant, at or near this time, also gave physical custody of D.G. to her mother (Grandmother). D.G. was not included in the petition alleging neglect and abuse.

An initial treatment plan was prepared by DFS. Among other things this treatment plan required appellant to get help for her behavioral and emotional problems. The plan also required appellant to visit C.G. regularly. This treatment plan began on January 14, 1994, and covered the period ending July 14, 1994. In order to help appellant meet the goals of the treatment plan, Furland referred appellant to drug and alcohol counseling, mental health treatment, and parenting classes. Despite admitting she used alcohol, marijuana, methamphetamine, and cocaine, appellant refused to participate in treatment with the exception of getting an initial evaluation of her drug and alcohol problems. Appellant also missed several visits with C.G. without giving prior notice to DFS.

In March 1994, DFS worker Lori Holmes assumed responsibility for the case. Upon taking over the case, Holmes spoke with appellant on two different occasions about the treatment plan and appellant's lack of progress. Holmes noted appellant still had not pursued drug and alcohol treatment or mental health counseling and had refused to provide voluntary urine samples. Appellant did, however, complete eight of ten parenting classes and had become more consistent in visiting C.G.

On June 3, 1994, Holmes took appellant to the House of Hope for a tour following a DFS intake recommendation that she complete an inpatient drug treatment program. Holmes recommended that appellant enroll in the program at the House of Hope, but appellant did not enroll. Despite Holmes's efforts to contact appellant, from June 17, 1994, to April 4, 1995, Holmes had no further contact with appellant. A new treatment plan, which included both C.G. and D.G., was prepared on June 24, 1994. Appellant never signed or returned the plan, despite receiving a copy from Grandmother.

1. The division is now known as the Division of Child and Family Services (DCFS).

During a hearing held on July 22, 1994, C.G. was placed in the temporary custody of Grandmother, who already had been given voluntary physical custody of D.G. by appellant sometime between December 1993 and February 1994. DFS was given protective supervision of C.G., and Grandmother was ordered to provide supervised visitation between the child and his mother. After this placement, appellant stopped communicating with Grandmother. On August 22, 1994, Holmes wrote a letter to appellant advising her that because of her failure to make significant steps towards accomplishing goals in the treatment plans, her parental rights to her children were in jeopardy.

On September 14, 1994, C.G. and D.G. were taken into custody by DFS, based on an allegation of abuse directed at Grandmother. Then on November 26, 1994, the juvenile court determined the children had been neglected by Grandmother, but the children were returned to Grandmother as temporary custodian with protective supervision by DFS.

Finally, on December 22, 1994, the State filed a petition to terminate the parental rights of both appellant and Father to both children. Father allowed a default judgment to be taken against him. After an evidentiary hearing, the juvenile court entered findings of fact, conclusions of law, and an order terminating appellant's parental rights. The findings included the following:

16. On December 22, 1994, the division filed a petition to terminate the parental rights of [appellant]. In spite of the division's continual and persistent attempts to work with [appellant] and to get her to participate in mental health counseling, in drug and alcohol treatment programs, and to maintain a minimum of once a month contact with the caseworker to evaluate the progress and to receive advice on treatment issues and provide encouragement, [appellant] made little or no effort to comply.

18. [Appellant] has from the beginning admitted that she has a drug problem, however, she has denied that the drug usage affected her parenting. The court, however, finds that [appellant's] drug use

has detrimentally affected her ability to parent. Because of her drug usage she is unable to cope with the ordinary stresses of parenting two young children, as evidenced by the behavior that originally brought the matter under the jurisdiction of the court. Because of her drug usage she puts her needs above the needs of the children, as evidenced by her failure to regularly visit the children. Because of her drug usage she is more likely to abuse and or neglect the children. When using drugs she becomes irresponsible. [Appellant] has been a regular user of methamphetamine. Besides her own admission there is further evidence of [appellant's] drug use. In May, 1995, she was convicted of possession of methamphetamine, a third degree felony[,] as well as possession of drug paraphernalia. In June 1995 she was convicted of possession of controlled substance, a third degree felony. She is currently on probation. Because [appellant] continues to use drugs and further because she does not recognize the detrimental effects that drug usage has on her parenting ability, and because she refuses to seek treatment, the children would continue to be at risk of neglect or abuse in her custody.

19. At the time of trial the evidence showed that [appellant] had willfully failed to comply with her treatment plan by not obtaining drug and alcohol treatment and by not obtaining mental health counseling regarding her stress management. There was sufficient evidence to indicate further that she had not complied with the treatment plan in her failure to have regular contact with the Division of Services caseworker.

The juvenile court concluded that, pursuant to Utah Code Ann. § 78–3a–407 (1995), appellant had "neglected these minor children and abused [C.G.]" and that she was "unfit or incompetent to parent these children because of her continued drug abuse that renders her unable to appropriately care for them." The court further concluded "there has been a failure of parental adjustment ... in that [appellant] has been unable or unwilling to comply substantially with the

terms and conditions of the treatment plan to reunite the family within six months after the children's removal, notwithstanding reasonable and appropriate efforts made by the Division of Family Services." Finally, the court concluded that the children had been in an out-of-home placement for over a year-and-one-half, under the custody and supervision of DFS, and DFS had "made reasonable efforts to provide services to [appellant] to enable her to reunite with her children, and she has substantially failed to remedy the circumstances that caused her children to be removed from her custody, and there is a substantial likelihood that she will not be capable of exercising proper and effective parental care in the near future." This appeal followed.

## ANALYSIS

### I. Was the Evidence Sufficient to Support a Termination of Appellant's Parental Rights to C.G.?

█ Appellant first claims the evidence was insufficient to support the termination of her parental rights to C.G. In determining whether to terminate the relationship between a parent and a child, a juvenile court must find the grounds for termination, as set forth in Utah Code Ann. § 78–3a–407 (1996), by clear and convincing evidence. *See In re S.R.*, 735 P.2d 53, 56 (Utah 1987); *see also Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982). However, on appeal "[f]indings of fact in a parental rights termination proceeding are overturned only if they are clearly erroneous." *State ex rel. E.D. v. E.J.D.*, 876 P.2d 397, 402 (Utah.Ct.App.1994). To challenge the sufficiency of a trial court's findings, an appellant " 'must marshall [sic] the evidence in support of the findings and then demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evidence.' " *Id.* (quoting *In re J.D.M.*, 808 P.2d 1122, 1124 (Utah.Ct.App.1991)). In this case, appellant has failed to marshal the evidence and demonstrate that the findings are clearly erroneous as applied to C.G. We therefore affirm the termination of appellant's parental rights as to C.G.

### II. Did the Juvenile Court Err in Terminating Appellant's Parental Rights to D.G.?

█ Appellant claims that because D.G., the younger child, was never in DFS custody, the court should not have granted the petition seeking to terminate parental rights as to D.G. In the alternative, appellant claims the evidence was insufficient to support the termination order as to D.G.

The juvenile court made the following conclusion of law in terminating appellant's parental rights as to both children:

> 1. That pursuant to UCA 78–3a–407, this parent has neglected these minor children and abused [C.G.] That [appellant] is unfit or incompetent to parent these children because of her continued drug abuse that renders her unable to appropriately care for them and her refusal to get necessary treatment.

Thus, the juvenile court found that appellant had neglected both children and that appellant was incompetent to parent the children because of her drug abuse.

Utah Code Ann. § 78–3a–407 (1996) states:

> The court may terminate all parental rights with respect to one or both parents if it finds any one of the following:
>
> . . . .
>
> (2) that the parent or parents have neglected or abused the child;
>
> (3) that the parent or parents are unfit or incompetent.

Furthermore, Utah Code Ann. § 78–3a–408(2) (1996) provides in pertinent part:

> In determining whether a parent or parents are unfit or have neglected a child the court shall consider, but is not limited to, the following conditions:
>
> . . . .
>
> (c) habitual or excessive use of intoxicating liquors, controlled substances, or dangerous drugs that render the parent unable to care for the child.

These statutes clearly provide that a juvenile court may terminate the rights of a parent to her child for neglect or incompetence when that court determines the par-

ent's habitual use of drugs renders that parent unable to care for the child. There is no requirement in the statutory scheme that the child be in DFS custody at the time the petition is filed. Therefore, appellant's first claim fails.

■ Appellant's second claim that the evidence was insufficient to support a termination of parental rights as to D.G. also fails. Specifically, appellant claims that any abuse or neglect on her part was only directed to C.G., not D.G. Utah courts have upheld termination of parental rights in cases involving drug use by parents. For example, in *In re S.R.*, 735 P.2d 53 (Utah 1987), the Utah Supreme Court reviewed the termination of the parental rights of a mother against a challenge of newly-discovered evidence. In that case, the juvenile court found the mother had an ongoing drug problem, which had detrimental effects on the children, and she had failed to comply with several requirements imposed upon her by the juvenile court (including attending counseling and making regular visits with her children). *Id.* at 55–56. The court terminated her parental rights based on these factors. *See id.* After careful examination of the facts, the court determined that the juvenile court exercised proper discretion in terminating the mother's parental rights. *See id.* at 57.

In another case, *State ex rel. P.H. v. Harrison*, 783 P.2d 565 (Utah.Ct.App.1989), this court reviewed and upheld a juvenile court's order terminating a mother's parental rights. In *Harrison*, the children were originally removed after they were found in poor living conditions, with head lice, and with possible cigarette burns on their buttocks. *Id.* at 567. After the children were removed, the mother was ordered to attend alcohol counseling and parenting classes, and make regular visits with her children. *Id.* She did not obtain the appropriate counseling nor did she regularly visit her children. *Id.* at 567–68. The order terminating the mother's parental rights to her children was upheld because she "was unfit, substantially neglectful, or incompetent by reasons of her course of conduct, her alcohol and drug addiction, and her failure to respond to the help which had been offered." *Id.* at 568.

The case at bar has many similarities to the cases previously discussed. Here, appellant admitted she had a drug problem; she refused to go to drug or mental health counseling; she failed one urine test and refused to submit to others; and she had at least two convictions for possession of drugs and/or drug paraphernalia. Furthermore, appellant made infrequent visits with her children while they were not in her custody. We conclude the juvenile court did not abuse its discretion in terminating appellant's parental rights to D.G. for neglect and incompetence based upon her excessive and habitual use of drugs and its effects, both actual and potential, on the children, as well as her refusal for more than one year to deal with her drug problem so that she could become a fit parent.

■ Our decision upholding the juvenile court's termination of appellant's parental rights as to D.G. is also supported by Utah Code Ann. § 78–3a–103(q)(i)(D) (1996), which defines a "neglected child" as one "who is at risk of being a neglected or abused child as defined in this chapter because another minor in the same home is a neglected or abused child as defined in this chapter." In *State ex rel. E.K.*, 913 P.2d 771, 774 (Utah.Ct. App.1996), this court interpreted the statute to mean that a child born after abuse had occurred in a home to that child's older siblings could qualify as a "neglected child" under the statute. In so holding, the court examined the purpose and intent of the Act, noting that the language of the section "was added 'to protect the siblings of seriously abused children.'" *Id.* at 773 (citation omitted). Thus, the neglect and abuse suffered by C.G. is relevant to the termination of appellant's parental rights to D.G. The juvenile court therefore did not err in terminating appellant's parental rights to D.G. for neglect.

## CONCLUSION

We conclude appellant did not marshal the evidence in her sufficiency claims as to C.G. We also conclude that there was sufficient evidence to terminate appellant's parental

rights to D.G. for neglect and unfitness. We therefore affirm.

DAVIS, P.J., and BENCH, J., concur.