21 P.3d 680 (2001)
2001 UT App 66
STATE of Utah, in the interest of E.R., J.R., J.R., and C.R., persons under eighteen years of age.
F.R. and T.R., Appellants,
v.
State of Utah, Appellee.
No. 990334-CA.
Court of Appeals of Utah.
March 8, 2001.
*681 Matthew Hilton, Springville, for Appellants.
Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Buckner, Asst. Atty. Gen., Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges BILLINGS, DAVIS, and ORME.

OPINION
DAVIS, Judge:
¶ 1 F.R. and T.R. (Parents) appeal the results of a permanency hearing and ask that we review three issues: First, did the juvenile court improperly conclude at the permanency hearing that the two oldest children should be placed in permanent foster care and the two youngest children be placed for adoption? Second, did the juvenile court illegally consider the Guardian ad Litem's (GAL) petition to terminate parental rights? Third, did the juvenile court err in granting the State permission to administer psychiatric medications to the children?

BACKGROUND
¶ 2 The Division of Child and Family Services (DCFS) has monitored Parents' four children, E.R, J.R., J.R., and C.R., since at least 1996. In December 1996, the juvenile *682 court issued a pick-up order authorizing DCFS to remove the children from Parents' custody. Although removed, the children were placed back with Parents and a service plan was ordered; however, custody and guardianship remained with DCFS. On May 23, 1997, Parents filed an "objection to service plan," contesting the plan's requirement of parenting classes and psychological evaluation of Parents. In July 1997, Parents obtained permission to take the children out of state for thirty days. Four months later, the court issued another pick-up order because Parents did not return with the children. The children were found with Parents in Arizona in February 1998, removed from Parents' custody, and returned to Utah.
¶ 3 On April 28, 1998, the court ordered a modified service plan pursuant to a hearing on Parents' objection to the service plan. Parents acquiesced to the modified plan. On June 16, 1998, an expedited hearing was held due to a suicidal gesture made by the oldest child. The court determined that DCFS, as guardian of the children, could administer psychiatric medication to the children without Parents' consent. Parents' attorney conceded that the court had the authority to grant such an order.
¶ 4 A permanency motion and termination petition were heard together in March 1999. The court denied the GAL's termination petition, finding that the GAL had established grounds for termination of parental rights, but that termination was not in the best interest of the children. In regards to the permanency hearing, based on Parents' lack of compliance with the modified service plan, the court ordered that the permanency goal of the two oldest children be long term foster care, and the permanency goal for the two youngest children be adoption.[1]

ISSUES AND STANDARDS OF REVIEW
¶ 5 We review three issues. First, did the juvenile court err at the permanency hearing by ordering that the two oldest children be placed in permanent foster care and the two youngest children be placed for adoption? A review of a permanency plan involves interpretation of statutory provisions which this court generally reviews without deference to the lower court's decision. See In re K.M., 965 P.2d 576, 579 (Utah Ct.App.1998). Further, when appellant challenges the court's findings of fact, appellant "`"must marshall [sic] the evidence in support of the findings and then demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evidence."'" In re D.G., 938 P.2d 298, 301 (Utah Ct.App.1997)(alterations in original) (citations omitted).
¶ 6 Second, did the juvenile court illegally consider the GAL's petition to terminate parental rights? This presents a question of statutory interpretation which we review for correctness, giving no deference to the trial court's interpretation. See In re R.N.J., 908 P.2d 345, 349 (Utah Ct.App.1995)(overruled on other grounds).
¶ 7 Third, did the juvenile court err in granting the State permission to administer psychiatric medications to the children? Juvenile courts are granted broad discretion in making such determinations. See In re M.L., 965 P.2d 551, 559 (Utah Ct.App.1998). However, in order for this court to review this issue, Parents must first show that this court has jurisdiction to hear the appeal. See Utah R.App. P. 3(a). For this court to have jurisdiction to hear the claim, the claim must arise from the order being appealed. Id.

ANALYSIS

A. Permanency Hearing
¶ 8 Parents contest the results of the permanency hearing arguing the following: (1) Parents were denied access to certain evidence and discovery material; (2) the plan imposed upon Parents was illegal; (3) the juvenile court erred in ruling that Parents failed to fulfill portions of the plan; and (4) the court erred by ordering adoption as the *683 permanency goal for the two youngest children when parental rights had not yet been terminated.

1) Access to Evidence and Discovery Material
¶ 9 Rule 24 of the Utah Rules of Appellate Procedure requires appellant's brief to contain "citation to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A). No such citation was provided in this case. This failure is particularly significant because Parents are appealing two rulings that were not part of the permanency order. Our review of the record reveals that Parents never objected to discovery defects or denial of access to evidence before trial. "Under ordinary circumstances, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error." State v. Helmick, 2000 UT 70, ¶ 8, 9 P.3d 164; see also State v. Gibbons, 740 P.2d 1309, 1311 (Utah 1987). Here, Parents complained to the trial court about discovery issues during the trial; however, these complaints were voiced well after the pre-trial meeting set up specifically to deal with such matters. Further, Parents did not request a sanction or object to the material during the trial itself. Thus, Parents did not preserve any discovery or evidence denial issues for our review.[2]

2) Legality of Service Plan
¶ 10 Likewise, Parents waived their right to appeal the legality of the modified service plan.[3] Here, the service plan had been in place for about one year before the permanency hearing. Parents never objected to the plan[4] or petitioned the trial court for its modification[5] and never attempted to appeal the final order arising from the dispositional hearing.[6]See Utah Code Ann. § 78-3a-311 (1996) (stating service plan may be ordered at dispositional hearing); Monson v. Carver, 928 P.2d 1017, 1022 (Utah 1996) (holding issues not raised at trial level cannot be argued for the first time on appeal); Hart v. Salt Lake County Comm n, 945 P.2d 125, 130 (Utah Ct.App.1997) (holding appellate court lacks jurisdiction if party does not preserve claim by first raising it before trial court).[7]

3) Parents' Compliance with the Service Plan
¶ 11 Parents also argue that the juvenile court erred in the permanency hearing by finding that they failed to meet the requirements of the service plan. The court's determination was based on the evidence presented to the court at the hearing. Parents are required to marshal the evidence properly so that we can assess their claim. *684 See In re R.A.F., 863 P.2d 1331, 1333 (Utah Ct.App.1993). Here, they fail to do so. However, if we were to review Parents' claim, we would review the juvenile court's factual findings based upon the clearly erroneous standard. See In re D.G., 938 P.2d 298, 301 (Utah Ct.App.1997). In addition, we have held that the juvenile court in particular is given a "wide latitude of discretion as to the judgments arrived at" based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges'"special training, experience and interest in this field, and . devot[ed]. . . attention to such matters .... In re F.D., 14 Utah 2d 47, 376 P.2d 948, 951 (Utah 1962). With this in mind, we are not convinced that the trial court went against the clear weight of the evidence in finding that the requirements of the service plan were not met. The trial court evaluated the evidence before it, and that evidence supported a finding that Parents did little or nothing to fulfill their obligations under the service plan. Thus, Parents' arguments fail because they did not marshal the evidence, and even if they had, the trial court did not go against the clear weight of the evidence in making this finding.

4) Permanency Goal of Children[8]
¶ 12 Finally, it is not improper for the court to deny termination, but set adoption as a permanency goal. See In re J.J.T., 877 P.2d 161, 165 & nn. 4-5 (Utah Ct.App.1994) (distinguishing between depriving parent of custody of child and terminating parent's rights); In re D.M., 790 P.2d 562, 567-68 & nn. 2-3 (Utah Ct.App.1990) (distinguishing between legal custody orders and termination of parental rights and requirements for each). Parents argue that In re R.A.J., 1999 UT App 329, 991 P.2d 1118, stands for the proposition that adoption cannot be the permanency goal if parental rights have not been terminated. However, Parents misread R.A.J. in which foster parents unsuccessfully sought to terminate the rights of the natural parents. R.A.J. holds that the court must "bifurcate[ ] the issues of parental unfitness and best interest of the child" in termination hearings. Id. at 118. In R.A.J., the juvenile court found grounds to terminate parental rights, but also found that termination was not in the best interest of the children. See id. at ¶ 4. This court recognized that the juvenile court's ruling in R.A.J. "may be at odds with some policy concerns of Utah's child welfare laws" which try to place children in a stable, permanent environment. Id. at ¶ 23. However, as in R.A.J., a situation may arise where there are grounds for termination, and adoption would be the best goal for the children, but at the time of the termination hearing, termination may not be in the best interest of the children.
¶ 13 It is conceivable that grounds for termination may exist, but termination nonetheless is not in the best interest of the children. For example, the children lose certain rights when termination occurs, such as support from their parents. Furthermore, even if adoption is the permanency goal, the children may not be immediately adopted, especially if the children are older or have emotional problems. Thus, it may be in the children's best interest for the court to set a goal of adoption before the court terminates the parents' rights.
¶ 14 In this case, the trial court's findings and conclusions of law support both grounds for termination and a permanency goal of adoption.[9] Nevertheless, the court determined that termination was not in the children's best interest, and the court set adoption as the permanency goal for the younger children in the order following its findings and conclusions. While a permanency goal of adoption is not necessarily inconsistent with ongoing parental rights, the findings should have articulated the court's reasoning where it simultaneously declined to terminate parental rights and set a permanency goal of adoption. Thus, we vacate the permanency order and remand for further findings articulating the reasoning behind simultaneously *685 denying the petition to terminate parental rights while setting a permanency goal of adoption and for entry of a permanency order in accordance with those findings.

B. Guardian ad Litem's Petition
¶ 15 Parents next contend that the juvenile court should not have allowed the GAL to submit a petition to terminate Parents' rights. Parents make the following arguments: (1) the GAL lacked statutory authority to file a termination petition, (2) the GAL failed to comply with the statutory requirements in filing the petition, and (3) the court cannot conduct both hearings at the same time because the standards differed between the permanency hearing and the termination hearing. Concerning this issue, Parents did not appeal the juvenile court's underlying factual findings on the petition to terminate parental rights, but only the legality of the proceeding. However, in oral argument, Parents asserted for the first time that even though they prevailed in the termination proceeding, their appeal was not moot because the factual findings of the juvenile court arising out of the termination hearing may have collateral estoppel consequences in later proceedings. Parents conceded in oral argument that they did not raise this issue in their opening brief, but cited a general statement in their reply brief which alluded to this argument. Rule 24 of the Utah Rules of Appellate Procedure clearly states: "Reply briefs shall be limited to answering any new matter set forth in the opposing brief." Utah R.App. P. 24(c) (emphasis added). In addition, Parents failed to brief this argument adequately as required by Rule 24(a)(9) of the Utah Rules of Appellate Procedure. See State v. Thomas, 961 P.2d 299, 305 (Utah 1998) (stating that Rule 24(a)(9) "requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority"). Thus, because Parents first argued this issue in their reply brief and did not adequately brief the issue, we will not address it. Cf. Romrell v. Zions First Nat'l Bank, 611 P.2d 392, 395 (Utah 1980) (holding that as a general rule, an issue raised initially in a reply brief will not be considered on appeal). Finally, because Parents appealed only the legality of the termination petition, and the petition for termination was denied, we do not address Parents' arguments that the GAL lacked statutory authority to file a termination petition or that the GAL failed to comply with the statutory requirements in filing the petition.
¶ 16 Parents also argue that pursuant to this court's decision in A.E. v. Christean, 938 P.2d 811 (Utah Ct.App.1997), the juvenile court erred by combining the permanency hearing with the termination hearing. However, Parents' reliance on A.E. is misplaced. In A.E., this court held that a dispositional review hearing could not be combined with a termination of parental rights proceeding because doing so "would bypass the steps established by the Legislature for final determination of a child's status." Id. at 816. A.E. addresses a situation where the parents did not yet have the opportunity to fulfill the service plan, and thus, a termination hearing at the same time as the permanency hearing was inappropriate. See id. However, here, the juvenile court did not conduct a dispositional hearing and a termination hearing at the same timeit held a permanency hearing and a termination hearing concurrently. Utah Code Ann. § 78-3a-312(6)(c)(Supp.2000) explicitly allows termination and permanency hearings to be combined.[10]Cf. In re KM., 965 P.2d 576, 582 (Utah Ct.App.1998) (holding proper for permanency plan to be determined at dispositional hearing).

C. Ruling Regarding Permission to Medicate the Children
¶ 17 Parents claim that the juvenile court erred by giving the State permission to *686 allow psychiatric treatment and medication for the children. There is no indication that Parents properly preserved their objection to the medication order. Again Rule 24 of the Utah Rules of Appellate Procedure requires appellant's brief to contain "citation to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A). No such citation was provided in this case. See Hart v. Salt Lake County Comm'n, 945 P.2d 125, 130 (Utah Ct.App. 1997) (holding appellate court lacks jurisdiction if party does not preserve claim by first raising it before trial court). Here, the permanency order is being appealed; however, the permanency order was issued almost a year after the order to permit medication.[11] Thus, we decline to address this issue because we have no indication of its preservation pursuant to Rule 24.[12]

CONCLUSION
¶ 18 In sum, the juvenile court properly concluded at the permanency hearing that the two oldest children should be placed in permanent foster care and the two youngest children be placed for adoption. In addition, the court acted within its discretion when it conducted the permanency hearing and the termination proceeding simultaneously. We vacate the permanency order and remand that matter to the trial court for additional findings articulating the court's reasons for simultaneously denying the petition to terminate and setting adoption as the permanency goal, and for reentry of a permanency order in accordance with those findings. Lastly, Parents did not preserve their right to appeal the court's order granting the State permission to administer psychiatric medications to the children; that order was not a part of the permanency order, and thus we lack jurisdiction over the issue. Affirmed in part and remanded in part.
¶ 19 WE CONCUR: JUDITH M. BILLINGS, Judge, GREGORY K. ORME, Judge.
NOTES
[1] The oldest two children, E.R. and J.R., were born September 22, 1982 and October 15, 1984, respectively. The youngest two children, J.R. and C.R., were born April 21, 1988 and March 25, 1990.
[2] In addition, "` "[a] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research."` " State v. Thomas, 1999 UT 2, ¶ 11, 974 P.2d 269 (citations omitted). Further, "`it is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief.'" Id. (quoting Valcarce v. Fitzgerald, 961 P.2d 305, 313 (Utah 1998)).
[3] Since Parents waived the right to appeal the plan, we decline to review Parents' arguments that (1) the post-pick-up plan was beyond the scope of the original stipulation, (2) the plan interfered with their right to interstate travel, and (3) the plan violated Parents' equal protection rights.
[4] We disagree with Parents' assertion that a motion to dismiss automatically includes an objection to the service plan. Here, Parents made no reference to the service plan in their pre-trial motion to dismiss, they did not make any objection when the modified service plan was ordered, nor did they make any objection during the trial itself.
[5] See Utah Code Ann. § 78-3a-120 (Supp.2000) (modification of order or decree).
[6] Cf. re W.S., 939 P.2d 196 (Utah Ct.App.1997) (considering appeal of order following dispositional hearing); In re E.M., 922 P.2d 1282, 1284 (Utah Ct.App.I996) (per curiam) (holding adjudication order based upon a determination on the merits in juvenile court is a final and appealable order).
[7] In addition, Rule 24 of the Utah Rules of Appellate Procedure requires appellant's brief to contain "citation to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A). No such citation was provided on this issue other than a citation to the order to dismiss which did not include any discussion of the legality of the service plan.
[8] Parents do not appeal the placement of the older children in long term foster care, thus we do not address that issue.
[9] Neither the State nor the GAL cross-appealed the trial court's determination that termination was not in the best interest of the children.
[10] Although this amendment came into effect on July 1, 1998, we agree with the State that the controlling law dates back to the time the motion for the permanency plan hearing was filed on January 22, 1999, and not to when DCFS first became involved with the family in 1996. See Utah Dep't Soc. Servs. v. Higgs, 656 P.2d 998, 1000 (Utah 1982) (stating "substantive law to be applied in an action is the law in effect at the date the action was initiated"). in addition, "when the purpose of an amendment is to clarify the meaning of an earlier enactment, the amendment may be applied retroactively in pending actions." Id.
[11] Further, Parents' lawyer conceded during the hearing on whether medication should be administered that the court could order the psychiatric examinations.
[12] In addition, Parents fail to attach a copy of the order concerning medication to their brief, thereby failing to comply with Utah R.App. P. 24(a)(1 1)(C).