2013 UT App 284

STATE of Utah, IN the INTEREST OF C.J., a Person under eighteen years of age.

S.H., Appellant,

v.

State of Utah, Appellee.

No. 20130885–CA.

Court of Appeals of Utah.

Nov. 29, 2013.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

Sophia Moore, Attorney for Appellant.

John E. Swallow and Carol L.C. Verdoia, Attorneys for Appellee.

Martha Pierce, Guardian ad Litem.

Before Judges GREGORY K. ORME, CAROLYN B. McHUGH, and STEPHEN L. ROTH.

Decision

PER CURIAM:

¶ 1 S.H. (Mother) appeals the termination of her parental rights. Mother challenges the sufficiency of the evidence to support the juvenile court's decision on the grounds for termination and the best interests of the child. We affirm.

¶ 2 "[I]n order to overturn the juvenile court's decision [to terminate parental rights], the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

¶ 3 After an April 2013 adjudication hearing, the juvenile court found that C.J. was neglected by Mother based upon Mother's admission to the allegations of the State's petition. The juvenile court then ordered the Division of Child and Family Services (DCFS) to provide reunification services, contingent upon Mother's entry into residential drug treatment. The family and child plan required Mother to complete a substance abuse evaluation, a domestic violence assessment, random drug screens, a psychological evaluation, drug court screening, and residential drug treatment. At the June 2013 permanency hearing, the juvenile court found that Mother had not cooperated with random drug testing, had not entered residential drug treatment or attended drug court, and had visited C.J. only once. The court found that Mother had not substantial-

ly complied with the family and child plan or court orders and that C.J. could not be safely returned to Mother's custody. The court further found that the services offered to Mother by DCFS constituted reasonable efforts to reunify Mother with C.J. and that the requirements of the plan were clearly communicated to her. Based upon Mother's lack of any effort to comply, the juvenile court terminated reunification services and changed the permanency goal to adoption in July 2013. At the termination trial in September 2013, Mother requested more time to remedy the circumstances that caused C.J. to come into custody. She provided evidence of a drug and alcohol evaluation obtained the morning of the termination trial and testified that, despite her previous lack of cooperation, she was now willing to begin drug treatment and comply with random drug testing and other court orders.

¶4 In order to find grounds for termination of parental rights, a juvenile court must conclude that any one of the grounds enumerated in Utah Code section 78A-6-507 exists. *See* Utah Code Ann. § 78A-6-507 (LexisNexis 2012). The evidence amply supports the juvenile court's determination under section 78A-6-507(1)(d) that the child had been cared for in an out-of-home placement and that DCFS made diligent efforts to provide appropriate services to Mother "who substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that caused [her] child to be in an out-of-home placement and there is a substantial likelihood that [Mother] will not be capable of exercising proper and effective parental care in the near future." *See id.* § 78A-6-507(1)(d). Similarly, the evidence amply supports the juvenile court's conclusion that Mother had demonstrated a failure of parental adjustment in that she had been unable or unwilling within a reasonable time to substantially correct the conduct or conditions that led to the placement outside the home notwithstanding the reasonable efforts of DCFS. *See id.* § 78A-6-507(1)(e); *see also id.* § 78A-6-502(2) (defining "failure of parental adjustment").

¶5 Although Mother challenges the sufficiency of the evidence to support each ground for termination of her parental rights, her central assertion is that she has fully addressed the circumstances that caused her child to be in an out-of-home placement and has the present ability to parent C.J. Mother claims that she is drug free and has stable and appropriate housing and the ability to provide for her child financially. However, her assertions are based almost completely upon her own testimony and fail to account for the totality of the evidence before the juvenile court. It is a significant overstatement for Mother to assert that she has fully addressed the circumstances that caused C.J. to come into State custody.

¶6 A juvenile court is required to weigh evidence of present parenting ability against a parent's past behavior. However,

if a parent has demonstrated some improvement in parenting ability but not a strong likelihood that the parent can provide a proper home for the child in the very near future, after a long period of separation, a history of problems and failure to remedy, and deterioration of the relationship between the child and parent, this court should not overturn a court's order terminating parental rights.

*In re B.R.*, 2007 UT 82, ¶13, 171 P.3d 435. Here, the evidence of Mother's present parenting ability was so insubstantial and speculative that the juvenile court did not err in its weighing of present parenting ability against past behavior. The juvenile court found that Mother "displayed a conscious disregard for the parent child relationship which led to the destruction of [the] parent child bond." Although Mother claimed to have stable housing and income, her testimony demonstrated that she still was unemployed and had difficulty supporting herself, and that her housing with a relative continued throughout the case. She had not completed any drug treatment that she had attempted, and she had obtained a new drug and alcohol evaluation only on the morning of the trial. Mother had demonstrated no significant change in her circumstances and provided no credible evidence that she had the present ability to parent C.J. or that she had remedied the

circumstances that caused C.J. to come into custody.

¶7 Mother also contends that she was unable to complete the required residential drug treatment only because the court terminated her reunification services and that if she had been given more time, she would be able to show substantial compliance. The juvenile court terminated reunification services at the permanency hearing held two months after the adjudication because Mother had taken no steps whatsoever to participate in services. At the permanency hearing, Mother did not dispute the DCFS report on her lack of progress and did not request an extension of services. Mother was not entitled to any particular period of services, and services can be terminated by the court at any time. *See* Utah Code Ann. § 78A–6–312(14)(a) (Supp.2013) ("If reunification services are ordered, the court may terminate those services at any time."). Furthermore, "if a minor is not returned to the minor's parent or guardian at the permanency hearing," the court shall order the termination of reunification services and make a final determination regarding an alternate permanency plan. *See id.* § 78A–6–314(4) (2012). The juvenile court found that Mother used her anger at C.J.'s removal as an excuse to continue to use drugs after C.J. was taken into custody. Mother refused to cooperate by completing the required drug treatment, and she refused to submit to random drug testing. The juvenile court did not err in terminating reunification services based upon Mother's lack of effort to comply.

¶8 Mother's challenge to the best interests determination is that, contrary to the juvenile court's finding, it was not "strictly necessary" to terminate her parental rights because she presented evidence that she planned to engage in treatment in the future and needed more time to remedy the circumstances that caused C.J. to come into State custody. This argument does not address the juvenile court's findings on best interests, including that the foster family had integrated C.J. into their family; had provided a safe, stable, caring, and nurturing environment; had provided necessary medical care to address C.J.'s flat head and physical therapy for his motor skills deficits; and has the desire to adopt him if the parental rights of the parents are terminated. Because Mother has not challenged the findings except to argue that she should have been granted more time to begin treatment and regain custody, we conclude that the challenge to the best interests determination is without merit.

¶9 Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's decision terminating parental rights. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.