*726 Decision
PER CURIAM:
4 1 M.R. (Mother) appeals the order terminating her parental rights to A.C. We affirm.
12 "[In order to overturn the juvenile court's decision, the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." - In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. See id. Therefore, "[wlhen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." In re B.R., 2007 UT 82, 1 12, 171 P.3d 435.
T3 The juvenile court concluded that several grounds supported termination of Mother's parental rights. Pursuant to Utah Code section 78A-6-507, the finding of a single enumerated ground will support the termination of parental rights See Utah Code Ann. § T78A-6-507 - (LexisNexis - 2012). Therefore, it is sufficient if the evidence supports any of the grounds for termination found by the juvenile court. The court found that A.C. was neglected by Mother, see id. § 7T8A-6-507(1)(b), and that Mother was an unfit or incompetent parent, see id. § 78A-6-507(1)(c). The court further found that A.C. had been in an out-of-home placement under the supervision of the juvenile court and the Division of Child and Family Services (DCFS), see id. § 78A-6-507(1)(d)(i), that Mother had "substantially neglected, willfully refused, or has been unable or unwilling to remedy the cireumstances that caused the children to be in an out-of-home placement," see id. § and that "there is a substantial likelihood that [Mother] will not be capable of exercising proper and effective parental care in the near future," see id. § 78A-6-507(1)(d)(iii). The court also found that Mother failed in her parental adjustment. See id. § 78A-6-507(1)(e). Finally, the court found that it was in A.C.'s best interest that parental rights be terminated.
1 4 Mother's petition on appeal purports to challenge only the best interest finding, claiming that the juvenile court failed to give adequate weight to her efforts to become a fit parent for her child. Mother claims that the juvenile court failed to recognize the education and insight she gained during the case as a result of the services she completed.[2] However, the juvenile court's detailed findings demonstrate the court's careful consideration of Mother's voluntary participation in a parenting course and her present parenting ability. After considering all of the evidence, the juvenile court did not agree that Mother had made the significant changes in her life and living situation that she claims to have made. The juvenile court's findings acknowledged that Mother had completed a parenting course at her own expense, visited A.C., and prepared her home for her. To the extent that Mother challenges the weight that the juvenile court placed on her efforts during this case relative to the other evidence before the juvenile court, we do not reweigh the evidence where there is a basis for the juvenile court's decision.
T5 Mother claims that there was no evidence that she abused or neglected A.C. because A.C. was never in her custody. Mother also claims that the initial referral received by DCFS based upon suspected fetal withdrawal symptoms was not corroborated by medical tests, and therefore, there was never a basis for A.C.'s removal. However, Mother does not challenge the basis for juvenile court jurisdiction over A.C. as a sibling at risk of being neglected because at least *727 four of her siblings had been the subject of child welfare proceedings that culminated with Mother's relinquishment of parental rights. See id. § T8A-6-105(27)(a)(iv) (Lex-isNexis 2012) (defining a neglected child to include one "at risk of being neglected or abused because another child in the same home is neglected or abused"). Furthermore, Mother did not appeal the adjudication order determining that A.C. was within juvenile court jurisdiction as a neglected child.
16 The juvenile court's findings amply support termination under section 78A-6-507(1)(d) by demonstrating that Mother had been unable to remedy the cireum-stances that caused A.C. to be in an out-of-home placement and that there was a substantial likelihood Mother would not be capable of exercising proper and effective parental care in the near future. The court found that Mother had continued her relationship with A.C.'s father, who is a registered sex offender, and found that her statements that she would divorce or distance herself from him were not credible. The court found that there were concerns about Mother's ability to parent A.C. due to her volatile moods, her high level of anger, her impaired reasoning and judgment, her past history of relationships with men who are violent or have alcohol problems, and her lack of insight into the relationship between her mental health issues and her parenting ability. Mother's failure to address the mental health and domestic violence issues that led to her inability to properly parent at least four of her five other children left the court with no confidence in the likelihood that she will be capable of exercising proper and effective parental care for A.C. in the near future. A.C. is in a prospective adoptive home where her needs are being met, she is integrated into that family, and the family loves A.C. and is able and willing to adopt her. The evidence amply supports both the grounds for termination and the best interests determination.
17 Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's order terminating Mother's parental rights. See In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435.

. After a hearing regarding reunification services, the juvenile court concluded that Mother was unable to overcome the statutory presumption against awarding services. Utah Code section 78A-6-312(20)(g) provides that "[t}here is a presumption that reunification services should not be provided to a parent if the court finds, by clear and convincing evidence, that any of the following circumstances exist: ... (g) the parent's rights are terminated with regard to any other minor." Utah Code Ann. § 78A-6-312(20)(g) (LexisNexis Supp.2013).