**2015 UT App 66**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF T.H., T.H.,
AND T.H., PERSONS UNDER EIGHTEEN YEARS OF AGE.

D.H.,
Respondent and Appellant,
*v.*
STATE OF UTAH,
Petitioner and Appellee.

Memorandum Decision
No. 20140265-CA
Filed March 19, 2015

Third District Juvenile Court, Salt Lake Department
The Honorable James R. Michie Jr.
No. 1086063, 1086064, 1086066

Richard K. Clark, Attorney for Appellant

Sean D. Reyes and John M. Peterson,
Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES MICHELE M. CHRISTIANSEN and JOHN A. PEARCE
concurred.

ROTH, Judge:

¶1      D.H. (Father) appeals from the juvenile court's order
terminating reunification services and awarding custody of his
three minor children to their mother (Mother). Father challenges
the sufficiency of the evidence to support that decision. We

conclude that the juvenile court's findings are supported by the record, and we therefore affirm.

¶2 "[I]n order to overturn the juvenile court's decision [on custody,] [t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (third alteration in original) (citation and internal quotation marks omitted). In considering whether this standard has been satisfied, we "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. We "may not engage in a reweighing of the evidence" but instead must only assess whether there is evidence that supports the juvenile court's findings and conclusions. *In re B.R.*, 2007 UT 82, ¶ 12.

¶3 This case originated in April 2013 from allegations of environmental neglect in the parents' home. Based on Mother's and Father's admissions,[1] the juvenile court adjudicated the children neglected. Accordingly, the court entered an order for "[p]rotected supervision," which is "a legal status created by court order following an adjudication on the ground of . . . neglect . . . , whereby the minor[s are] permitted to remain in the . . . home, and supervision and assistance to correct the . . . neglect . . . is provided" by the Division of Child and Family Services (DCFS). *See* Utah Code Ann. § 78A-6-105(33) (LexisNexis Supp. 2014).[2] At a subsequent disposition hearing,

---

1. Mother and Father admitted some of the allegations outright, and other allegations were deemed true pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure, which treats "[a]llegations not specifically denied by a respondent [to] be deemed true," Utah R. Juv. P. 34(e).

2. Several provisions of the Juvenile Court Act, including this one, were amended in 2014. *See, e.g.*, Utah Code Ann. § 78A-6-

(continued...)

the juvenile court set a goal of keeping the children in the custody of both parents, provided that the parents could acquire and implement the skills necessary to keep the children safe in the home.[3] DCFS created a child and family plan with specific services and responsibilities for each parent (the Service Plan).

¶4    Both parents initially made efforts to comply with the Service Plan, but on September 11, 2013, Mother obtained a protective order against Father that required him to move out of the home. The protective order did not specifically preclude Father's contact with the children but instead awarded temporary custody to Mother and "[d]efer[red] to Juvenile Court" on parent-time. The juvenile court subsequently prohibited Father from exercising parent-time with the oldest child until a therapist authorized visitation to resume. It allowed Father to have parent-time with the younger two children but mandated that all visits be supervised by DCFS or another court-approved agency.

¶5    By late September 2013, police had arrested Father for violation of the protective order. Father was in and out of custody for protective order violations until at least January 2014. During his incarceration, Father could not participate in the services offered through the Service Plan. Once he was released from custody in January 2014, he participated in regular

_____

(…continued)
105 amend. notes (LexisNexis Supp. 2014). The particular subsections that are relevant to this appeal have not been amended, so we cite the current version of the Utah Code Annotated for the reader's convenience.

3. The juvenile court set a concurrent goal of adoption of the children. Because Mother adequately remedied the situation that caused the children's neglect, this goal was not pursued and thus is not at issue in the appeal.

supervised parent-time with the two youngest children and had a trial visit with the oldest child, after which the child expressed a desire to resume visitation.

¶6 On March 19, 2014, the juvenile court conducted a review hearing. Counsel for each parent, the State, and the Guardian ad Litem (GAL) addressed the need for the juvenile court's continued involvement with the family and the allocation of custody and parent-time going forward. The parties presented no testimony at the hearing. Mother, through her attorney, asked the juvenile court to close the case and award her sole legal and physical custody of the children. Counsel argued that such action was appropriate because Mother had remedied the environmental situation that resulted in the adjudication of neglect and she planned to continue participating in therapy and skills training through Hopeful Beginnings even after the case terminated. Mother's attorney also reported that Mother was abiding by the protective order and cooperating with law enforcement's ongoing investigation of criminal charges against Father for repeatedly violating the protective order. Mother's attorney also stated that Mother had demonstrated a willingness to facilitate Father's parent-time with the children. Father's attorney responded that Father sought joint legal custody and that he wanted the court either to allow him unsupervised parent-time with the children according to the standard statutory schedule or to continue its jurisdiction over the family until such an order could be put in place. Father's attorney reported that Father was complying with Adult Probation and Parole and was "extremely eager . . . to prove that he is a safe and stable father figure to these children." The State recommended, based on the significant improvement of the children's environment, that custody be given to Mother and the juvenile case be closed. The GAL recommended that the case be kept open so as to better assess Father's ability to care for the children now that he had been released from jail.

¶7    After hearing all of the arguments and considering written reports prepared by DCFS and Hopeful Beginnings, the juvenile court agreed with Mother and the State that the case should be closed. Accordingly, it entered an order giving Mother sole legal and physical custody of the children, granting Mother discretion, with the input of Hopeful Beginnings, to determine how much visitation the children should have with Father, and terminating both DCFS services and the juvenile court's jurisdiction over the family. Father appeals, arguing that the evidence does not support the juvenile court's decision.

¶8    Specifically, Father contends that there is insufficient evidence to support three findings: (1) "that it was not safe to return the minor children to the custody of Father"; (2) "that Father was not in substantial compliance with the Service Plan"; and (3) "that it would be in the children's best interest that Father's reunification services be terminated and that permanen[t] custody and guardianship be awarded to [Mother]." It is not apparent from the record that the juvenile court actually made either of the first two findings. Instead, it appears that the juvenile court determined that it was in the children's best interests to terminate the court's jurisdiction and that doing so required that the children be placed in the legal custody of one parent. In light of that decision, the juvenile court awarded Mother "[s]ole legal custody" and "discretion to determine the visitation with the Father and children."[4] These decisions have support in the record.

¶9    Regarding the decision to terminate jurisdiction, the juvenile court stated that although "there [were] several reasons why it would make sense to keep [the case] open," the court would close the case because the parties had come under the

---

4. Father has not challenged the juvenile court's decision to award Mother "discretion to determine the visitation" rather than to set a parent-time schedule.

jurisdiction of the court due to an environmental neglect issue that had since been resolved. The court further noted that custody had not been a concern until the issuance of the protective order because the court had initially ordered protective supervision, which permitted the children to remain in both their parents' custody in the family home. And even with the issuance of the protective order and Father's subsequent incarceration, the parties themselves, with the assistance of DCFS and Hopeful Beginnings, had been able to craft a parent-time arrangement that allowed the children a safe and healthy relationship with Father. Because the parents would continue to receive services from Hopeful Beginnings beyond the termination of the juvenile court case and because Mother had demonstrated her willingness to facilitate the children's visitation with Father, the juvenile court concluded that the "limited scope" of the juvenile court jurisdiction did not permit it to keep the case open solely for the purpose of monitoring the "conflict between mom and dad." Given the function of the juvenile court and the circumstances that caused it to become involved with this family, the court's finding that it would be in the children's best interests to terminate DCFS services and the court's jurisdiction has a basis in the record.

¶10    The record also supports the court's decision to choose Mother as the children's custodian. Although Father apparently complied with DCFS as much as he could while out of custody and expressed a willingness and desire to parent the children, Father placed himself in a position, by repeatedly violating the protective order, where he could not fully participate in the Service Plan or care for the children. Because of his violations, Father was in and out of jail during at least five of the nine months that the Service Plan was in effect. While he was in jail, he did not participate in services or exercise parent-time with the children. And even when he was out of custody, Father had no parent-time with the oldest child, except for one trial visit, and had only *supervised* visitation with the two younger children. Although by the time of the final review hearing Father had

resumed parent-time with all three children, it was still on the condition that the visits be supervised. Thus, the court had a basis for determining that it was not feasible for Father to have physical custody of the children.

¶11    With respect to the juvenile court's decision to deny joint legal custody, it is important to recognize that Father is not allowed to have any contact with Mother until after the protective order expires in September 2015. This includes a prohibition on physical contact and also a ban on any form of communication, such as telephone, email, or mail contact. Thus, there was a basis for the juvenile court to determine that given the severe constraints on their ability to communicate, the parents could not jointly make the types of decisions that legal custody entails. *See* Utah Code Ann. § 78A-6-105(22) (LexisNexis Supp. 2014) (defining legal custody to include decisions regarding physical custody, education, and ordinary and emergency medical care of minor children). For these reasons, we conclude that there is no clear error in the court's finding that it was in the children's best interests for the court to award Mother sole legal custody.

¶12    Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's custody order. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

_____