**2016 UT App 3**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF M.D., J.D., AND A.D.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

A.D.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20150955-CA
Filed January 7, 2016

Third District Juvenile Court, Salt Lake Department
The Honorable Charles D. Behrens
No. 1094548

Sheleigh A. Harding, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME and J. FREDERIC VOROS JR., and
JUSTICE JOHN A. PEARCE.[1]

PER CURIAM:

¶1      A.D. (Father) appeals the order terminating his parental
rights to M.D., J.D., and A.D.[2] We affirm.

---

1. Justice John A. Pearce sat by special designation, as authorized
by law. *See generally* Utah R. Jud. Admin. 3-108(3).

2. Another child born during this case, whose initials are also
J.D., is not involved in this appeal.

¶2 "[T]o overturn the juvenile court's decision [to terminate parental rights], the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous when the court "fail[s] to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12. Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3 The juvenile court concluded that several grounds supported termination of Father's parental rights. Under Utah Code section 78A-6-507, the finding of a single enumerated ground will support termination of parental rights. Utah Code Ann. § 78A-6-507 (LexisNexis 2012). The juvenile court concluded that Father was an unfit or incompetent parent. *See id.* § 78A-6-507(1)(c). The court further concluded that the children had been in an out-of-home placement under the supervision of the juvenile court and the Division of Child and Family Services (DCFS), *see id.* § 78A-6-507(1)(d)(i); that Father had "substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that caused the children to be in an out-of-home placement, *see id.* § 78A-6-507(1)(d)(ii); and that "there is a substantial likelihood that [Father] will not be capable of exercising proper and effective parental care in the near future," *see id.* § 78A-6-507(1)(d)(iii). The court also concluded that Father abandoned his children, *see id.* § 78A-6-507(1)(a), and also failed to communicate with his children for more than six months and to show the normal interest of a natural parent, without just cause, *see id.* § 78A-6-508(1). The juvenile court also concluded that Father had made only token efforts to support or communicate with the children, to prevent neglect of the

children, to eliminate the risk of serious harm to the children, or to avoid being an unfit parent. *See id.* § 78A-6-507(1)(f). The court further concluded, as required by statute, that it was in the best interests of the children to terminate Father's parental rights. *See id.* § 78A-6-503(12) (LexisNexis Supp. 2015).

¶4　Because these children were "Indian children" as defined by the Indian Child Welfare Act (ICWA), *see* 25 U.S.C.A. § 1903(4) (West 2015), the juvenile court also found that the State had shown beyond a reasonable doubt that continued custody of the children by Father was likely to result in serious emotional or physical damage to the children.[3] The State gave appropriate notice to the Navajo tribe. The tribe did not intervene and did not ask to have the case removed to tribal court.

¶5　Father challenges the sufficiency of the evidence to support any ground for termination of his parental rights and to support the juvenile court's decision on the best interests of the children. However, Father concedes that he did not complete any services and did not participate in the case from May 2014, when he elected not to participate in services, until September 28, 2015, which was the date of the trial. Father also concedes that he did not complete any services; he had no supervised visits with the children; and he was incarcerated at the time of

---

3. Section 1912(f) of the ICWA requires,

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C.A. § 1912(f) (West 2015).

trial. Nevertheless, Father claims that the State failed to satisfy the "active efforts" requirement under ICWA, which states,

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

*Id.* § 1912(d). Father argues that if active efforts "would have occurred, he could have been successful in his case." Father also challenges the conclusion that continued custody of the children by Father would be likely to result in serious emotional or physical damage to the children, claiming that the State must prove specific examples of the harm that would occur if the children were returned.

¶6    The children's removal and placement in DCFS custody in October 2014 was a foster care placement that triggered the active efforts requirement. *See In re C.D.*, 2008 UT App 477, ¶ 20, 200 P.3d 194. Similarly, the State must satisfy the active efforts requirement in seeking to terminate Father's parental rights. *See* 25 U.S.C.A. § 1912(d). "The ICWA requires active efforts to avoid the breakup of the Indian family or evidence that can support a finding that such efforts would be futile." *In re C.D.*, 2008 UT App 477, ¶ 27. Thus, "the State must demonstrate that active efforts have been made with respect to the specific parent . . . or provide evidence that such efforts would be futile." *Id.* ¶ 30. Accordingly, we review the juvenile court's finding that further efforts with Father would have been futile, "applying the heightened active efforts requirement." *Id.* ¶ 35. "Although the state must make 'active efforts' under the ICWA, it need not persist with futile efforts." *See id.* ¶ 36 (citation and internal quotation marks omitted).

¶7    The juvenile court found that on May 7, 2014, Father "voluntarily elected to not participate in services" and "effectively opted out of reunification." This occurred roughly five months before the children came into DCFS custody when the case was a protective supervision case and over a year before the State filed a termination petition. Father concedes that he did not participate in the case from May 2014 to September 2015. At the time of the termination trial, Father had not seen the children for a least a year. The juvenile court had ordered supervised visits for Father in May 2014; however, no supervised visits took place, although Father may have had unsupervised visits in violation of a no contact order. Father testified that he could not remember the last time he had seen the children. The juvenile court also found that DCFS had provided active efforts to the family to prevent removal and to reunify the children with their parents.[4] The court further found, "[Father's] whereabouts were unknown to [DCFS] and any efforts on the part of [DCFS] would have been futile."

¶8    Contrary to Father's assertions, the testimony of the ICWA expert witness from the Navajo tribe does not undermine the juvenile court's determination that further services directed to Father would be futile. The ICWA expert witness testified that she tried to contact Father toward the beginning of the case, but that his number was out of service. She also testified that Father was in need of services to address parenting, substance abuse, and domestic violence issues, and that he was not ready to take custody without those services. With regard to the active efforts requirement, the expert testified that she "would like to see a little more effort by" DCFS, but that Father "needed to stay in contact with" DCFS. The expert testified that she "would have

---

4. The juvenile court continued reunification services to the mother after removal in October 2014, until July 2015, when the permanency goal changed to adoption. The mother relinquished her parental rights to the three children involved in this case.

set home visits just to check on the father." However, the expert acknowledged that there could have been no visits if DCFS had no contact information for Father. The expert expressed concern that in most of her cases, the states involved in those cases provided bus passes and that, in her experience, she knew of only two caseworkers who had gone to a parent's home to provide transportation. She stated, "So I believe that more could have been done if the father's whereabouts were known." She believed that he should have been transported "if his whereabouts were known." She further testified,

> I think overall any parent who would want to be with their children, they would do all that they can for their children. They would be visiting. They would be working their services. And in this case, my concern is he decided not to. . . . [H]e did admit to alcohol. Without the services, if he's still using, that's my concern.

Finally, the expert testified that the children would suffer serious physical or emotional damage if returned to their parents' custody.

¶9    The ICWA expert witness's testimony was consistently qualified by her statements that further efforts with Father would be possible only if he stayed in contact with DCFS so that his whereabouts were known. The expert's testimony does not support Father's assertion that the expert believed that the active efforts requirement was not satisfied nor did it undermine the juvenile court's determination that further efforts would be futile. Father's assertion that the evidence from the ICWA expert was insufficient because she was "unable to identify any specific serious emotional or physical harm which would occur to the children if they were returned to [Father's] custody" is both unpersuasive and unsupported by meaningful analysis.

¶10    Additional evidence in the record supports the juvenile court's determination that further efforts directed to Father would be futile. The caseworker testified that during the protective supervision case, Father told her before a May 2014 hearing that he did not want to continue his services. She had assisted Father in setting up evaluations, called agencies on his behalf, and set up appointments. However, Father then decided that he did not want to participate in those services. The caseworker talked to Father before he reached this decision and encouraged him to continue services. A second caseworker who assumed responsibility after removal of the children from the mother testified that Father contacted her in August 2014 a couple of times, but that he also called from a pay phone and left no contact information. She testified that if a parent fails to participate in services, there would still be some contact through supervised visits with the children that might provide an opportunity to motivate the parent to participate. Father did not attend any supervised visits. Although Father claimed that his caseworkers did not keep in contact with him, he admitted that they had no way to contact him. He also claimed that he could have been reached through his sister, but the original caseworker testified on rebuttal that when she asked his sister or the children's mother about Father, they always said that they had not talked to him.

¶11    Father's challenge to the best interests determination also lacks merit. The juvenile court found that the children had medical and mental health issues that require treatment, and the court detailed those requirements. Although the children were not in a prospective adoptive home, the testimony demonstrated that this was the result of the continuing efforts of DCFS and the Navajo tribe to place the children in an Indian home that could meet their specific physical and mental health needs, which included exploring a possible kinship placement in Arizona. Based upon Father's testimony, the juvenile court found that he was not even aware of the physical or mental health needs of the children. Father had made "no effort to learn or educate[]

himself as to what services they do need." Father did not have a relationship with the children and had not had any meaningful contact with them for at least a year. The best interest determination is amply supported by the evidence.

¶12    Father's core challenge to the sufficiency of the evidence to support any ground for termination or the best interest determination is based upon his claim that he did not receive the active efforts required by the ICWA. Father's related claims, which are based solely upon his own assertions that he is now sober and "ready to engage fully in his case," and that the State therefore should be required to extend him further services in an effort to reunify him with the children, similarly lacks merit. Father does not otherwise challenge the sufficiency of the evidence to support any of the enumerated grounds for termination or the best interest determination. Because "a foundation for the court's decision exists in the evidence," we affirm. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

———————